# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **ROLAND JONES** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 07-2041 (PLF)** |
| | ) |
| **PETE GEREN,** | ) |
| **Secretary of the Army, et al.,**[1] | ) |
| | ) |
| **Defendants.** | ) |

_____)

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant respectfully submits its Reply to Plaintiff's Motion to Deny Defendant's Motion to Dismiss ("Opposition"). Plaintiff alleges it is arbitrary and capricious for the Army Board for the Correction of Military Records ("ABCMR")[2] to deny Plaintiff additional promotion opportunities and for the ABCMR staff to return his subsequent requests for reconsideration without action. Plaintiff's challenge of the ABCMR's denials of relief were previously litigated and resulted in a final judgment on the merits. The present action is barred by _res judicata_ because at the time that Plaintiff's first suit was dismissed, Plaintiff fully litigated the claims he brings in this instance. Plaintiff's recent attempt to change legal forums and utilize new legal theories in order to re-litigate his prior unsuccessful lawsuit is the textbook problem

---

[1] Plaintiff has named a number of unnecessary and improper parties as Defendants in the instant action. The Honorable Pete Geren, in his official capacity as the Secretary of the Army, is the only proper party Defendant for Plaintiff's APA claims. See 5 U.S.C. § 702. All of the remaining Defendants are improper parties in this action and should be dismissed.

[2] The Army Board for Correction of Military Records is composed of civilians appointed by the Secretary of the Army, and has statutory authority to "correct any [Army] record" in order to "remove error or injustice." 10 U.S.C. § 1552(a).

*res judicata* is designed to solve.  In reviewing Plaintiff's prior case for a third time, the Eleventh

Circuit stated: "This case is now at an end." (Def Ex. 1 at 3.)  Eight years later, Plaintiff still

refuses to accept that result.  For the reasons set forth below, and in Defendant's previously filed

Motion, Defendant asks that this Court enforce that result and dismiss Plaintiff's Complaint.

### A.  **Plaintiff's Claims Must Be Dismissed Under the Doctrine of *Res Judicata*.**

Re-litigation of the merits of Plaintiff's instant Complaint is precluded by the ruling of

the United States District Court for the Northern District of Georgia in Jones v. Sec'y of the

Army et al., No. 88-00727 (N.D. Ga. Sep. 27, 1991).  The Supreme Court has repeatedly

emphasized that the doctrine of *res judicata* serves a vital and fundamental purpose of justice in

ensuring that a final judgment of a court is recognized, and that it forever puts to rest an issue

between parties.  Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981) ("The

doctrine of res judicata serves vital public interests); Montana v. United States, 440 U.S. 294,

299 (1979) ( "A fundamental precept of common-law adjudication, embodied in the related

doctrines of collateral estoppel and *res judicata*, is that a 'right, question or fact distinctly put in

issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a

subsequent suit between the same parties or their privies ).  As a leading treatise describes it, *res

judicata:*

> is not concerned with whether a prior judgment was right or wrong or whether
> subsequent changes in the law, the discovery of additional facts, or consideration of
> fairness should merit a different result in the subsequent litigation. It is concerned only
> with bringing an end to litigation after the parties have had a fair opportunity to litigate
> their claims.

Moore's Federal Practice, Chap. 18, §131.12[3] (2007); See also Hardison v.  Alexander, 655

F.2d 1281, 1288 (D.C. Cir 1981) ("The appeal process is available to correct error; subsequent

litigation is not"). *Res judicata* relieves the parties of the cost and vexation of relitigating claims with the same party or their privies, conserves judicial resources, and encourages reliance on adjudication. Allen v. McCurry, 449 U.S. 90, 94 (1980).[3]  *Res judicata* is particularly appropriate in this instance where Plaintiff refuses to accept the decision of the prior litigation and seeks to re-litigate the issue in a different forum.

*Res Judicata* provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. Federated Dep't Stores, Inc., 452 U.S. at 398.  In determining whether the principles of claim preclusion apply, a court must examine three factors:  (1) whether the parties are legally identical; (2) whether the transactions or events underlying the claims are substantially related; and (3) whether the nonmoving party had a full and fair opportunity to litigate the claim. Nevada v. United States, 463 U.S. 110, 130 (1983).  A comparison of Plaintiff's 1988 lawsuit with the Amended Complaint shows that all three factors have been met.

    1.    <u>The parties to this action are legally identical</u>.

    Plaintiff's April 1, 1988, Complaint was filed against the Secretary of the Army, the

---

[3] The term *res judicata* is a broad term that is sometimes used to describe both claim preclusion and issue preclusion. Pharm. Care Mgmt. Ass'n v. District of Columbia, 477 F. Supp. 2d 86, 91 (D.D.C. 2007) ("*Res judicata* has two distinct aspects-claim preclusion and issue preclusion (commonly known as collateral estoppel)-that apply in different circumstances and with different consequences to the litigants"). Claim preclusion applies to whole claims, whether litigated or not, while issue preclusion is limited to particular issues actually resolved.  "In short, 'claim preclusion forecloses all that which might have been litigated previously,' while issue preclusion 'prevents the re-litigation of any issue that was raised and decided in a prior action.' Pharm. Care Mgmt. Ass'n, 477 F. Supp. 2d 86, at 91 (citing I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944 at 949 (D.C. Cir. 1983)).  While this Motion relies on claim preclusion to dismiss the entire Complaint, it is worth noting that Counts I and II of Plaintiff's Amended Complaint were directly litigated previously and fall under issue preclusion as well.

Department of the Army, the ABCMR, the Total Army Personnel Agency, and two government employees who served as the Executive Secretaries for the ABCMR. (Def. Ex. 1.); (NDGA Complaint, Def Ex. 4)[4] Likewise, Plaintiff filed his current suit against the Secretary of the Army, The Department of the Army, the Army Review Boards Agency, and four other officials of the Army and the ABCMR in their official capacity. (Amended Comp.) "A government and its officers are in privity for purposes of res judicata." Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402 (1940). Although there are now different officials holding those offices for the Army, over a hundred years ago the Supreme Court made clear that "the mere fact that there has been a change in the person holding the office does not destroy the effect of the thing adjudged." New Orleans v. Citizens Bank, 167 U.S. 371, 389 (1897). As a result, there can be no doubt that the parties in this action are legally identical.

    2.    The events underlying the claims are substantially related.

The transactions underlying Plaintiff's Amended Complaint and the prior 1988 lawsuit are substantially related, if not identical. "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002). In determining whether cases share a common nucleus of facts, a court should consider "'whether the facts are related in time, space, origin, or motivation, whether they form a

---

[4] For consistency Defendant's Exhibits to its Reply are numbered sequentially with the Exhibits filed with its Motion to Dismiss. Thus, Exhibits to this Reply start at Defense Ex. 4 and continue forward. A Court can take judicial notice of publicly filed documents, such as the records of prior court proceedings, when resolving a Rule 12(b)(6) motion. See Marshall Cty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1228 (D.C. Cir. 1993); Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). Taking judicial notice of those documents does not convert the 12(b)(6) motion into a motion for summary judgment. See United States v. Rumsfeld, 350 F. Supp.2d 80, 88 (D.D.C. 2004).

convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" <u>Apotex, Inc. v. FDA</u>, 393 F.3d 210, 217 (D.C. Cir. 2004) (citations omitted).

Plaintiff claims that his "current causes of action and issues are different that what he had litigated in the Northern District of Georgia and the Court of Appeals for the Eleventh Circuit [because] Plaintiff is now before this Court defending his due process rights. " (Pl. Opp. at 13.) In contrast, Plaintiff contends that his prior complaint merely involved "discrimination" (<u>Id</u>. at 12.)  Plaintiff's statement is inaccurate and misleading. While Plaintiff's prior complaint did contain discrimination claims, his forty page prior complaint with over eighty pages of attached exhibits clearly alleged due process claims and specifically focused on the ABCMR's refusal to correct Plaintiff's military records. <u>Compare</u> (Am. Compl. at ¶¶ 19-20) <u>with</u> (Def. Ex. 4, NDGA Compl., at 22-33) (alleging various due process violations of the ABCMR by failing to act on his ABCMR applications and requests for reconsideration). In fact early in the prior litigation Plaintiff's discrimination claims were dismissed and it was Plaintiff's due process claims that actually went forward to summary judgment.  (Def. Ex. 5 at 28-33,  <u>Jones v. Sec'y of the Army et al.</u>, No. 88-00727 (N.D. Ga. Sep. 27, 1991).)[5]  Given the breadth of the prior litigation, it simply cannot be argued that this current litigation does not revolve around the same nucleus of facts as Plaintiff's prior complaint.

_____

[5] Defense Exhibit 5 includes various orders from the Northern District of Georgia and the Eleventh Circuit that the Defendant was able to obtain and that the Defendant deems relevant to the current issue of *res judicata*. Some of these documents have hand-written markings, apparently from the U.S. Attorney's Office in Georgia where Defendant obtained these files. Defendant numbered these pages for ease of reference in this action.  The full docket report for the prior litigation is contained at Defense Exhibit 6.

In this particular instance it is abundantly clear that *res judicata* applies not only because Plaintiff's Complaint involves the same nucleus of facts, but in many instances it involves the exact same issues decided in the prior litigation.  The precise question put to the District Court in 1988–whether "the Army Board for the Correction of Military Records failed to act on his requests for administrative review and correction of his Army records" (Def. Ex. 1 at 2)–is the same question Plaintiff brings in the current suit.  Compare (NDGA Compl. at 3, ¶ 3a; 22, ¶ 10; 24, ¶¶ 11(c)(d); 26, ¶ 13b; 32 ¶ 16a(2)) with (Am. Compl. ¶¶ 25-28.)  The Eleventh Circuit concluded that the "district court properly rejected [Plaintiff's] claims that the [ABCMR] failed to fulfill their duty of reviewing his complaints regarding the correction of his military records." (Def. Ex. 5 at 40, Jones v. Sec'y of the Army et. al., 91-8893, Oct. 19, 1992 at 2 (11th Cir. 1992)).  Instead the Eleventh Circuit held that the ABCMR's actions "as the district court concluded, were appropriate and supported by substantial evidence." (Id.)

Plaintiff also argues that his current Complaint brings a "new argument before the ABCMR . . . that he had been wronged by the military by not following this Court's prior ruling in Dilley."(Plaintiff's Opp. at 13).  Thus, Plaintiff maintains that because the previous court did not explicitly rule on the pass-over letters in his promotion file this is a new issue before this Court.  Notwithstanding the fact that this "new argument" was previously raised and rejected by the Eleventh Circuit (Def. Ex. 1 at 2-3) ("Jones returned to the district court once again, moving . . . to adjudicate his 'pass-over' claim . . ."), even if the argument were new, *res judicata* bars a subsequent action "based on the same set of facts and asserted injury even though the subsequent action asserts a different legal theory to justify recovery." Moore's Federal Practice, Chap. 18, §131.12[3] (2007); See also Nevada v. United States, 463 U.S. 110, 129 (1983) ("final judgment

6

puts an end to the cause of action, which cannot again be brought into litigation between the parties on any ground whatsoever.") (citations omitted).  As the D.C. Circuit noted, where a plaintiff has "brought suit to challenge [how] the Army had passed over him for promotion . . . and lost . . . he permitted the judgment of that court to become final, and forever lost the right to relitigate the issues he had an opportunity to raise before that court . . . ."  Hardison v. Alexander, 655 F.2d 1281, 1289 (D.C. Cir. 1981).  In Hardison, a plaintiff challenged his non-promotion and the ABCMR's decisions denying him relief.  Id.  This Court granted summary judgment to the Army.  However, the ABCMR subsequently allowed the plaintiff to submit additional requests for relief and granted him additional, albeit unsuccessful, promotion opportunities.  Id.  Still unsatisfied with the result, plaintiff subsequently re-filed new litigation against the Army. The D.C. Circuit affirmed the dismissal on *res judicata* grounds stating that "[a]s far as the law is concerned, the actions of the [promotion] boards are now beyond challenge . . . [w]hether they were properly constituted or not, and whether they considered erroneous OER's or not, it is now too late for relitigation of those questions . . . ."  Id.  The D.C. Circuit specifically stated that because of the prior district court decision, "[t]he courts are thus precluded from ruling that Hardison has 'never been validly nonselected for promotion.'"  Id.  Like Hardison, Plaintiff in this case continues to challenge his promotion and the ABCMR's decisions refusing to grant him relief.  Despite Plaintiff's attempts to find new forums and new legal arguments, his case turns on a straightforward application of the principles of *res judicata*.

    3.    Plaintiff had a full and fair opportunity to litigate his claims.

In this instance there is no question that Plaintiff had, and used, his full and fair opportunity to litigate his claims. (See Def. Mot. at 5-7); (Def Ex. 1).)  Plaintiff had every

7

incentive to fully litigate the issue, and took every opportunity to challenge adverse rulings or decisions. Following the adverse judgment by the District Court in 1991, Plaintiff unsuccessfully sought reconsideration of the judgment, appealed the case to the Eleventh Circuit Court of Appeals, sought *certiorari* from the United States Supreme Court, and subsequently sought a new trial from the District Court, denial of which was affirmed on appeal. (Def. Ex. 1.)[6] Plaintiff had a full and fair opportunity to litigate his claims by a complaint, an amended complaint, motions, appeals, and every other facet of litigation available. Although Plaintiff claims he is not attacking these prior results (Pl. Opp. at 12), his arguments are essentially asking this Court to undue the prior district court decisions and the final Eleventh Circuit opinion in Jones v. Sec'y of the Army, 207 F.3d 664 (11th Cir. Ga. 2000), *reh'g en banc denied*, 212 F.3d 602. (Defense Ex. 1.) However, because "plaintiff had a full and fair opportunity to litigate the issues it now raises, it does not work unfairness to preclude the plaintiff from relitigating the same issues in this court." Pharm. Care Mgmt. Ass'n, 477 F. Supp. 2d at 98 (citation omitted).

## B. Plaintiff Cannot Overcome The Statute of Limitations Bar.

Defendant's Motion sets forth why Plaintiff's Complaint falls outside the statute of limitations under the controlling case law in the D.C. Circuit. (Def. Motion at 18-19.) Plaintiff appears to agree with the controlling case law but offers a novel and unsupported theory that the "ABCMR continued to toll the statute of limitations by allowing staff members to make determinations on the prior actions. . . . " (Plaintiff's Opp. at 12.)    Contrary to Plaintiff's

---

[6] The detailed court orders set forth at Defense Exhibit 5 exhaustively lay out the prior litigation and should help alleviate any doubt that Plaintiff had a full and fair opportunity to litigate his claims.

unsupported assertion, the statute of limitations was not tolled while the Plaintiff repeatedly

pursued his case before the ABCMR. The only conceivable basis for tolling of the statute of

limitations in this instance would be if Plaintiff was required to exhaust his appeals with the

ABCMR before seeking judicial review, and his repeated letters were part of that exhaustion

process. However, judicial review of Plaintiff's ABCMR action does not require administrative

exhaustion. See Darby v. Cisneros, 509 U.S. 137, 154 (1993) (There is no requirement of

administrative exhaustion when seeking judicial review of certain agency actions under the

APA); Kosnik v. Peters, 31 F. Supp. 2d 151, 157 (D.D.C. 1998) ("ABCMR review is one that

does not require administrative exhaustion"). In Kendall v. Army Bd. for Correction of Military

Records, 996 F.2d 362 (D.C. Cir. 1993), a soldier was convicted at courts-martial and lost

several challenges to his court-martial before the military appellate courts and the ABCMR. Id.

at 365. When the plaintiff finally brought suit in a United States District Court, thirteen years

after his action accrued, this Court held, and the D.C. Circuit affirmed, that his claim was barred

by Section 2401(a). Id. As in Kendall, Plaintiff here chose to file numerous appeals for

reconsideration to the ABCMR. Plaintiff's ceaseless appeals to the ABCMR were not

mandatory and thus did not toll the statute of limitations. Plaintiff sought correction of his

military records from the ABCMR and was denied relief in 1983. (Pl. Mot. at Ex. E3). Plaintiff

submitted a request for reconsideration to the ABCMR which was denied in 1984. (Pl. Mot. at

Ex. E9). Plaintiff submitted an additional request for reconsideration to the ABCMR which was

denied in 1985. (Pl. Mot. at Ex. E15). Plaintiff submitted a later request for reconsideration to

the ABCMR which was denied in 1998. (Pl. Mot. at Ex. F1). While not required, Plaintiff

exhausted whatever administrative remedies he had numerous times prior to 1999. Any further

requests for reconsideration by Plaintiff were beyond unnecessary and in no way tolled the statute of limitations.

### C.    Plaintiff Fails to State a Claim For Relief Under 10 U.S.C. § 1552.

Plaintiff argues that this Court's ruling in Lipsman v. Sec'y of the Army, 335 F. Supp. 2d 48 (D.D.C. 2004), limiting the authority of ABCMR staff members, is relevant to Plaintiff's complaint because: "the ABCMR had made a mistake in law and manifest error . . . when in 2002, 2001, and 1999, he erroneously allowed his staff the discretion to determine that Plaintiff's submission did not contain sufficient evidence...." (Plaintiff's Opp. at 6).  Plaintiff

forgets, or simply ignores the fact, that a change in the law does not eliminate the effect of *res judicata*. As previously stated, *res judicata*:

> is not concerned with whether a prior judgment was right or wrong or whether subsequent changes in the law, the discovery of additional facts, or consideration of fairness should merit a different result in the subsequent litigation. It is concerned only with bringing an end to litigation after the parties have had a fair opportunity to litigate their claims.

Moore's Federal Practice, Chap. 18, §131.12[3] (2007); Federated Dep't Stores, 452 U.S. at 398 (Plaintiff was precluded from bringing subsequent action even though his co-plaintiffs in prior action successfully appealed judgment); Hardison, 655 F.2d at 1288 ("The appeal process is available to correct error; subsequent litigation is not").  Because Plaintiff's allegation is barred by *res judicata* even a change in the law does not provide Plaintiff further relief.

Moreover, as set forth in Defendant's Motion, even if Lipsman did apply to some of Plaintiff's reconsideration requests, the ABCMR's action still did violate 10 U.S.C. § 1552 because in denying Plaintiff's redundant and repetitive requests for reconsideration the ABCMR

10

staff did not make substantive judgments. (Def. Mot. at 20-24.)  In this instance, the ABCMR

staff did not violate 10 U.S.C. § 1552 when it made ministerial and procedural determinations

regarding Plaintiff's requests for reconsideration.[7]  The ABCMR's act of returning Plaintiff's

numerous reconsideration requests without taking action is consistent with 10 U.S.C. § 1552 and

provides another reason why Count III of Plaintiff's Complaint should be dismissed.

### D.    Plaintiff Fails To State A Claim For Mandamus Relief.

Plaintiff provides no factual or legal support that is contrary to Defendant's argument

opposing a writ of mandamus.  Plaintiff erroneously asserts that Defendant is in accord with

Plaintiff's request for mandamus.  (Pl. Opp. at 14.)  Plaintiff's Amended Complaint fails to state

a claim upon which relief may be granted because Plaintiff has failed to set forth the necessary

prerequisites or demonstrate exceptional circumstances warranting mandamus relief.  See Swan

v. Clinton, 100 F.3d 973, 977, n.1 (D.C. Cir. 1996); see also Haneke v. Secretary of Health,

Education, and Welfare, 535 F.2d 1291 (D.C. Cir. 1976).

### E.  Plaintiff Fails To State A Claim For Declaratory Relief.

Plaintiff provides no factual or legal support or other claim against the United States to

avail himself of relief under the Declaratory Judgment Act.  Plaintiff's Amended Complaint fails

---

[7]  Plaintiff alleges that his last formal application to the ABCMR was prior to 1998.  (Pl. Ex.
E3).  Plaintiff does not allege that his subsequent reconsideration requests presented any new
evidence or matters beyond the issues addressed in (at least) the ABCMR's 1998 denial of
reconsideration. All other "requests" that Plaintiff asserts are nothing more than simple letters or
correspondence through members of Congress to the ABCMR.  Thus, Plaintiff indicates that he
submitted nothing to the ABCMR following 1998 other than letters expressing his displeasure
with the results of the ABCMR decision.  However, assuming *arguendo*, that simple
correspondence letters were "reconsideration requests" under 10 U.S.C. § 1552, Plaintiff's
reconsideration requests were properly denied by the ABCMR staff because the letters contained
no new evidence.

to state a claim for relief because the Declaratory Judgment Act does not create an independent

claim or basis for relief against the United States.  See Schilling v. Rogers, 363 U.S. 666, 677

(1960).  This Court has no jurisdiction to entertain any claim against the United States under the

Declaratory Judgment Act because Plaintiff fails to state an actionable claim against the United

States under the Mandamus Act, the All-Writs Act, or the Administrative Procedures Act.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant

Defendant's Motion to Dismiss.

Respectfully submitted,

___/s/_____

JEFFREY A. TAYLOR, D.C.  Bar # 498610

United States Attorney


___/s/_____

RUDOLPH CONTRERAS D.C. Bar # 34122

Assistant United States Attorney


___/s/_____

BRIAN BALDRATE

Special Assistant U.S.  Attorney

555 Fourth Street, N.W.

Room E4408

Washington, D.C.  20530

Ph: (202) 353-9895

*Attorneys for Defendant*

Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 1 1988

By: LUTHER D. THOMAS, Clerk
        Deputy Clerk

ROLAND A. JONES                          *
                                         *
        Plaintiff                        *
                                         *
    vs.          **1:88-CV-727**MHS      *
                                         *
The Secretary  of the Army,              *
The Department of the Army,              *    CIVIL ACTION FILE
The Army Board for Correction of         *    NO.
  Military Records and the Total Army    *
  Personnel Agency (Provisional)         *
Mr. JOHN W. MATTHEWS and Mr. KARL        *
BIELENBERG, individually and in their    *
capacities as Executive Secretaries      *
for the Army Board for Correction        *
of Military Records,                     *
        Defendants                       *

COMPLAINT
Jurisdiction and Venue
[1]

Mr. John W. Matthews, of the Army Board for the Correction of
Military Records (ABCMR), has <u>ordered me out of the military</u>
<u>system for redress</u>  into federal court, thereby, invoking the
jurisdiction of this Court **(See Exhibit "B1")**.    And, it has
already been upheld in an appellate decision <u>Baxter v. Claytor</u>,
652 F. 2d. 181 (D.C. Cir. 1981) that it is illegal for a military
board not to act on applications for the correction of a military
record **(See Exhibit "A4")**.    Therefore, this Court must consider
the procedures followed by the military board because the
procedural defects rose to the level where they affected the
integrity of the agency's fact-finding and decisionmaking. (See
<u>Baxter v. Claytor</u>, 652 F. 2d. 181 (D.C. Cir. 1981, <u>Blassingame v.</u>
<u>Secretary of the Navy</u>, 811 F. 2d. 65 (2d Cir. 1987, and <u>Neal v.</u>
<u>Secretary of the Navy</u>, 639 F. 2d. 1029 (3rd Cir. 1981).

In this action for declaratory relief, injunctive relief and

1

damages to redress the deprivation of rights secured to me, jurisdiction of this Court is also invoked pursuant to 28. U.S.C. S 1343 (1970), 29 U.S.C. S 151 et seq. (1970) and 42 U.S.C. 2000e et seq., as amended (Supp. II, 1972). To secure protection of and to redress deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U. S. C. which conferred jurisdiction in civil matters on the courts by the provisions of the Title for Civil Rights, as specifically conferred by 42 U. S. C. 2000e-5, and equitable relief specifically conferred by 42 U. S. C. 2000e-5(g) providing for injunctive and other relief against discrimination in employment on the basis of race; the thirteenth amendment to the United States Constitution and 42 U. S. C. 1981 providing for the equal rights of all persons in every state and territory within the jurisdiction of the United States; the fourteenth amendment to the United States Constitution and 42 U. S. C. 1983 providing for the redress of deprivation of rights under color of law; 42 U. S. C. 1985 providing for relief from conspiracy to deprive persons of their civil rights; 42 U.S. C. Sec 1988 providing for the protection of all persons in their civil rights; the 14th Amendment providing for due process; Georgia Code Ann. 3-704, providing for twenty (20) years for the redress of employment discrimination; and the Privacy Act providing for the failure to protect the confidentiality of medical information.

[2]

Jurisdiction of this Court is also invoked pursuant to Hains v. Kerner, 404 U.S. 519 520-21, 92 S.Ct 594, 595-96, 30

2

L.ed.2d 652, 1972), quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80, 1957, reaffirmed in <u>Estelle</u>, 429 U.S. at 99, 106, 97 S.Ct. at 292) and progenies <u>Milton v. Nelson</u>, 527 F.2d.1158, 1160 (9th Cir. 1975); <u>Daye v. Bounds</u>, 509 F.2d 66, 68 (4th Cir), cert. denied, 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975); <u>Flowers v. Turbine Support Div.</u>, 507 F.2d 1242, 1244 (5th Cir. 1975)  providing for pro se complaints not prepared by a lawyer  must be read with tolerance, and dismissal is not permitted unless the court can say "with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleading drafted by lawyers, it appears `beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief'".

[3]
### Right Of Action
a.

This right of action accrued on March 8, 1988 **(See Exhibit "B")** when it was discover that errors found by an Army Special Review Board **(See [13], below)** have not been applied or not properly applied to my personnel file.

b.

Secondly, this right of action accrued on  February 28, 1985 when all administrative procedures within the ABCMR were prematurely foreclosed by order of Mr. John W. Matthews  **(See Exhibit "B1")** (See also <u>Baxter v. Claytor</u>, 652 F. 2d 181 (DC Cir. 1981), **Exhibit "A4"** for when a right of action accrues)).

c.

Congress has established a six year statue of limitations on civil suits against the United States under 28 U. S. C. 2401(a).

3

d.

Alternatively, Georgia Code Ann. 3-704, provides for twenty (20) years for the redress of employment discrimination.

## Parties

I.

The discrimination and unlawful employment practices alleged below were and are being committed within the Department of the Army.

As plaintiff, I am a retired U. S. Army Lieutenant Colonel (AUS). I am a black male citizen of the United States and a resident of Fulton County, Georgia. I was employed by defendant Department of Defense, U. S. Army, from June 1, 1959, until September 30, 1980 at which time I was asked to voluntarily retire because I was not qualified for promotion to Lieutenant Colonel (RA).  Upon my refusal to retire, I was force-retired.

II.

Defendant Department of Defense (DOD) is the  overall supervisor of the Armed Forces of the United States.  As such it has the duty and responsibility to carry out an effective equal employment opportunity program for the U. S. Army, the U. S. Navy, and the U. S. Air Force.

III.

Defendant, the Army Board for Correction of Military Records, hereinafter ABCMR, an implementer of the military justice system, is an agency of the Secretary of the Army and at all times germane to this action operated under color of law and the rules and regulations.  This defendant is an employer  within the meaning of Title VII, 42 U.S.C. Sec. 2000e (b), (g) and (h).  It

4

has continuously and does now employ more than fifteen persons. As such, the ABCMR has the duty and responsibility to <u>enforce the equal employment opportunity program for the U. S. Army</u>. The ABCMR has an expressed statutory jurisdiction pursuant to 10 U. S. C. Section 1552 to act on applications for the correction of military records when desperate impact, desperate treatment, errors, disparities, or injustices are present; the ABCMR must follow the procedural requirements set by its governing statue, and is bound to follow those regulations which it has adopted. As such, the ABCMR has an expressed regulatory obligation under Section II, paragraph 10e, Army Regulation 15-185 and Section VI, Action on Applications, 21b(1)(d) to provide a claimant with advisory staff opinions upon which a denial of an application is based. <u>(See pages 4 and 6 Exhibit "A")</u>

IV.

Defendants John W. Matthews and Karl Bielenberg are past and present Executive Secretaries for the ABCMR. As such had/have the duty and responsibility to administer to the ABCMR and assure that the ABCMR comply with the law, Army rules and regulations, such as Section II, paragraph 10e, Army Regulation 15-185 and Section VI, Action on Applications, 21b(1)(d), and 10 U. S. C. Section 1552.

V.

Defendant Department of the Army (DA) is an agency created under the DOD and at all times germane to this action operated under color of law and rules and regulations. This defendant is an employer within the meaning of Title VII, 42 U.S.C. Sec. 2000e

5

(b), (g) and (h). It has continuously and does now employ more than fifteen persons. As such it has the duty and responsibility to carry out an effective equal employment opportunity program for the U. S. Army and direct the hiring and discharge of army personnel.

VI.

Defendant Total Army Personnel Agency, a.k.a. Military Personnel Center, hereinafter MILPERCEN, is an agency created under the DA and at all times germane to this action operated under color of law and rules and regulations. This defendant is an employer within the meaning of Title VII, 42 U.S.C. Sec. 2000e (b), (g) and (h). It has continuously and does now employ more than fifteen persons. As such it has the duty and responsibility to carry out an effective equal employment opportunity program for the U. S. Army and direct the hiring, promotion, and discharge of army personnel.

**Statement of Claims Upon Which Relief Can Be Granted**

I.

The defendants have discriminated and continue to discriminate against me on the basis of race and color because the Military Personnel Center (MILPERCEN) entered into an ensuing and continuing pattern of discrimination of denying me infantry assignments for eighteen (18) years, which resulted in limited or no qualifications that prevented promotion and retention on the list for the Regular Army (active duty). MILPERCEN effected its discrimination by operating according to a "hidden agenda" consisting of dishonest and misleading acts, practices, policies, and customs. And, the Army Board for Correction of Military Records (ABCMR) and the MILPERCEN jointly and illegally entered

6

into an ensuing and continuing pattern to conceal facts and
information from me for fourteen (14) years that the ABCMR had
failed to act on applications for the correction of my military
records in 1974, 1975, and 1976. Top official of the ABCMR (Mr.
John W. Matthews) covered up the fact that the ABCMR had failed
to act in 1974, 1975, and 1976, and his successor, Mr. Karl
Bielenberg, in 1985, lied to cover-up for the illegal actions of
Mr. Matthews.

II.

This Court is respectfully reminded that pursuant to Rule 8,
Federal Rules Civil Procedures, I must provide defendants with
statements of claims for relief and <u>defendants must to admit or
deny each asserted claim</u>. And, if defendants should deny, such
denials must "<u>fairly meet the substance of the averments denied</u>".
Therefore, defendants' specific instances, acts, policies,
practices, and customs of discrimination are enumerated below in
Parts I, II, and III:

[1]

**PART   I**

**Applies to both Parts II and III, below**

The defendants have discriminated and continue to
discriminate against me on the basis of race in that:

1.    Black soldiers are disproportionately overrepresented
in all types of unfavorable actions.

2.  A significantly greater proportion of whites than blacks
have been granted relief in the Army's system of justice.

3.    Discharges for blacks are four times as likely to be
approved than whites.

4.    Institutional discrimination in the Army personnel sys-

7

tem exists because <u>implementers of the military justice system</u> <u>do not perceive it to be discriminatory.  The higher the rank,</u> <u>the more the system is seen as impartial.</u>

(Source for all of the above: <u>The Army Study of Racial Factors</u> <u>in the Army's Justice and Discharge Systems</u>).

[2]
PART II
U. S. Total Army Personnel Agency (Provisional), a.k.a. MILPERCEN
Discrimination in assignment practices and procedures.

MILPERCEN knowingly and willingly discriminated <u>by assigning</u> <u>me a profession of arms primary speciality of Infantry Officer</u> and for eighteen (18) years (1962 to September 30, 1980) <u>it did</u> <u>not assign</u> me to profession of arms  infantry units where knowledge, skills, ability, and experience that a <u>profession of</u> <u>arms officer</u> must have to be qualified for promotion and retention on the active list of the Regular Army could be acquired and maintained. Then, because I was not qualified in the <u>profession of arms,</u> all  because of MILPERCEN's own shortcoming of not assigning me to infantry units, MILPERCEN did not promote me to Lieutenant Colonel (RA) and, because I was not promoted, MILPERCEN penalized me and perpetuated its own discrimination  by removing me from the active Regular Army list:

a.

While defendants  required that I possess the knowledge, skills, ability, and experience in the <u>profession of arms</u> to be qualified for promotion,  defendants controlled access to all the opportunities that would produce  the knowledge, skills, ability, and experience.  Defendants discriminated by failing to provide access to the opportunities that only they controlled.

8

b.

MILPERCEN implementers willingly and knowingly discriminated because they knew that a long term pattern of not providing me with infantry assignments would result in my not acquiring the necessary knowledge, skills, and abilities required to be qualified for promotion and retention on active duty.

c.

Defendants also knew that the long term impact would be devastating to my career when compounded by the affects of the findings of the Army "Butler Study" (See [6d], below), the stereotyping by race in my OERs (See [6g], below), the Order of Merit List (OML), the illegal use of medical information in my OERs, and the ABCMR not acting on my 1974, 1975, 1976 applications for correction of my record (See Part III, below).

d.

Had I been provided infantry assignments, I would have acquired the necessary knowledge, skills, abilities, and experience necessary for promotion to Lieutenant Colonel (RA), and my forced retirement from active duty could have been prevented.

e.

The non-infantry assignments provided me by defendants for eighteen (18) continuous years of a twenty one (21) year career were obviously not good enough to keep me qualified and competitive for promotion and retention on active duty.

f.

Although warned on July 9, 1970, September 14, 1970 (See Exhibit "N3.1"), November 3, 1972 (See Exhibit "N3.2"), November

9

24, 1972 (See Exhibit "N3.3"), November 29, 1972 (See Exhibit "N3"), defendants made no attempt to correct for past discriminatory effects of not assigning me to infantry units.

g.

Instead, defendants entered into an ensuing and continuing pattern of desperate treatment and impact to continue to deny me infantry and infantry command assignments. For example:

(1)

Against my pleas and against Army instructions for only a two (2) year assignment (See Exhibit "J") and under the guise of the so-called "needs of the Army", MILPERCEN implementers held me in a non-infantry assignment, ROTC, for an additional year.

(2)

After holding me in the above non-infantry, ROTC, assignment for an additional year and while being warned that I had not had an infantry assignment since 1962 (See Exhibit "N3.1), MILPERCEN implementers assigned me to still another non-infantry assignment in Liberia, West Africa, for another two (2) years.

(3)

The Chief of the Liberia Military Mission, Colonel Richard Miller, was supportive of my attempts to get an assignment in an infantry unit. Colonel Miller approved a military leave for me to travel to Washington (See Exhibit "N3.4.1") to present my request for an infantry assignment.

(4)

While in Washington, I warned them that I wanted to be assigned to an infantry division (the 82d Airborne Division, See Exhibit "N3.2"). Although warned, the MILPERCEN implementers

10

continued their discrimination by wanting to assign me as an instructor at the US Army Institute for Military Assistance, still another non-infantry assignment.

(5)

On November 29, 1972 a black MILPERCEN staff officer warned the white MILPERCEN implementers that they were discriminating against me (See Exhibit "N3", also from the MILPERCEN personnel file held secret from me).

(6)

Upon my return from Washington Colonel Miller wrote a letter on my behalf to MILPERCEN (See Exhibit "N3.3"), however, MILPERCEN continued to discriminated by responding to Colonel MIller still insisting on yet another non-infantry assignment (See Exhibit "N3.4").

(7)

Also upon my return from Washington, an already bad situation was made worse  my white rater, Lt. Col. Shean, who  was completely insensitive and discriminated against me by  issuing me a letter of reprimand for being AWOL when, in fact, I was on an authorized leave approved by Colonel Miller (See Exhibit "N3.4.1"), my boss and also his boss.

(8)

Lt. Col. Shean also discriminated  by instigating the worst OER of my career as a follow-up on his illegal letter of reprimand. (See also the Army "Butler Study", [6d] below) (See also [7] and [13d(5)], below).

(9)

The MILPERCEN implementers again discriminated by holding me

11

in the Liberia non-infantry assignment beyond the normal two (2)
years for no legitimate reason other than they forgot that I was
there.

(10)

Upon my return from the non-infantry assignment in Liberia
the MILPERCEN implementers discriminated by ignoring my request,
the letter of Colonel Miller, and the warnings of their own staff
members, and assigned me to still another non-infantry assignment.

(11)

On July 9, 1974 a white MILPERCEN implementer responsible for
seeing that I receive the necessary depth in assignments lied to
me cover-up the fact that he and his predecessors had not
provided me with an equal opportunity of  infantry, battalion,
and brigade experience.  (See his memo, Exhibits "N2" from a
personnel file kept secret from me).

(12)

Although  the black MILPERCEN officer and other interoffice
memoranda dated July 9, 1970, September 14, 1970 (See Exhibit
"N3.1"), November 3, 1972 (See Exhibit "N3.2"), November 24, 1972
(See Exhibit "N3.3"), November 29, 1972 (See Exhibit "N3"), July
9, 1974 (See Exhibit "N2"),  Exhibit "N3.4", and N3.5 warned the
white MILPERCEN implementers that they had discriminated against
me by not providing infantry assignments, the white MILPERCEN
implementers disregarded the warnings and took no action to
correct for not providing infantry assignments from 1962 to 1974,
and they topped off their disrespect for the warnings and
discriminated by also not taking any action from 1975 to 1980 to
provide infantry assignment opportunities.

12

**[3]**
## Assignment discrimination continued.

For five (5) years and five (5) months (1974 to September 30, 1980), MILPERCEN implementers knowingly and willingly discriminated by assigning me a secondary speciality of a Management Information Systems Officer (MISO) and not assigning me to MIS schools and units where knowledge, skills, ability, and experience, required of a MISO and necessary for promotion and retention on the active list of the Regular Army, could be acquired and maintained. Then, because I was not qualified, the MILPERCEN implementers perpetuated their discrimination by penalizing me for their failure to properly assign me to MIS schools and units, by not promoting me to Lieutenant Colonel (RA) and, based on my not being promoted, by removing me from the active Regular Army list:

a.

While defendants required that I possess the knowledge, skills, ability, and experience of a MISO to be qualified, defendants controlled access to all the opportunities that would produce the knowledge, skills, ability, and experience. Defendants discriminated by failing to provide access to the MIS opportunities that only they controlled.

b.

Had I been provided MIS schooling and assignments, I would have acquired the necessary knowledge, skills, and abilities for promotion to Lieutenant Colonel (RA), and my failure to be promoted and forced from active duty could have been prevented.

c.

Instead, MILPERCEN entered into an ensuing and continuing

13

pattern of desperate treatment and impact to continue to deny me
MIS schools and assignments.

d.

The non-MIS assignments provided me by MILPERCEN for five (5)
years and five months were obviously not good enough to keep me
qualified for promotion and retention on active duty.

[4]
Assignment discrimination continued.

The discrimination against me in the above personnel
assignment system  was institutional, and it was allowed to
continue because implementers of the system did not perceive it
to be discriminatory...the higher the rank, the more the system
was seen as impartial (Source: The Army Study of Racial Factors
in the Army's Justice and Discharge Systems):

a.

Implementers of the military personnel system discriminate by
operating a "hidden agenda" for "grooming" others (so-called
"fair haired boys" or "water walkers") (e.g. Brigadier General
Pete Dawkins, among many, many others) for promotion and
assignments at my expense.  While the MILPERCEN implementers
provided the "water walkers" with choice assignments  that would
assure promotions to the higher ranks, the MILPERCEN used me to
fill the other "needs of the Army" that were not being filled by
the so-called "fair haired boys/water walkers".

b.

White MILPERCEN implementers responsible for my personnel
records and the direction that my  career would follow,
operated according to a "hidden agenda".  Under the "hidden

14

agenda" they <u>intentionally lied and misled</u>  me in order to discriminate during the process of assigning me to unimportant and unimpressive military assignments **(See Exhibits "N2" from a personnel file kept secret from me).**

### c.

The MILPERCEN implementers by  maintaining a secretly held personnel files.  They conspired to maintain two (2) separate military personnel files, one of which was used for a discriminatory purposes because it was kept secret and was used to operate the "hidden agenda" assignments:

### (1)

The official personnel file was maintained by the Adjutant General and was available to me for review.

### (2)

The secret  personnel file was maintained by the Infantry Branch of MILPERCEN and was not available to me for review.  The hidden personnel file was also not subject to challenge or correction.

### (3)

The secret personnel file was used by MILPERCEN implementers to make career decisions and recommendations for OML rankings, school assignments, branch assignments, and recommendations to selection boards.

## [6]
## Discrimination in the MILPERCEN OER System.

A MILPERCEN official stated that "any institution [the Army] left to its own devices, will discriminate in favor of the white male" **(Source: Colonel Loma O. Allen, Chief, Race Relations and Equal Opportunity, See Army Times, September 24, 1975, Exhibit**

"N"). The discrimination against me in the below Officer Evaluation Report system was left to the devices of MILPERCEN, and it was allowed because <u>implementers of the system did not perceive it to be discriminatory...the higher the rank, the more the system is seen as impartial</u> (Source: The <u>Army Study of Racial Factors in the Army's Justice and Discharge Systems</u>):

a.

MILPERCEN, using its own devices, discriminated against me in favor of the white male by operating a discriminatory OER and OER appeal system. The systems are based on secrecy, deceit, and a "hidden agenda" as confirmed by the Office of the Assistant Secretary of Defense (See Exhibit "V1"), and coordinated with MILPERCEN (See Exhibit "V1.1"). The OER appeal system contains an unreasonable and unattainable burden of proof of error to correct an OER (See Exhibit "V2").

b.

MILPERCEN in its Regulation 623-105 encourages discrimination with the use of the "micrometer of discrimination" for the judgments made by personnel managers and selection boards (See Exhibit "A3").

c.

MILPERCEN in its Regulation 623-105 provides the mechanism for perpetuating discrimination in OERs because it precludes challenging the motives of the rating official (See para. 7-3, Exhibit "V3"). (See also Exhibits "V1", "V2", and "V4").

d.

The "micrometer of discrimination" is administered in the favor of white males receiving OERs and white males who prepare

16

OERs on black officers.    Even if the rating official's comments
are biased or illegal    (e.g. Lt. Cols. Fred N. Massey, Frederic
L. Shean and Col. Grace Gay Thomas),    the implementers of the
"micrometer of discrimination" are inclined to uphold biased or
illegal OERs prepared by white males, on blacks, even though the
Army "Butler Study" found:

> "...historically black officers received lower numerical
> ratings on OERs than did white officers". (Exhibit "F")

> "A recurring phenomenon revealed...is that a
> significantly larger percentage of black officers
> received scores on the lower end of the   OER spectrum
> than did white officers. Conversely, a significantly
> larger number of white officers received scores on the
> upper end of the OER spectrum than did black officers".
> (Exhibit "F")

> "...a large part of the disparity was the result of a
> variety of forms of discriminating practices and
> outlook...occurring within the Army..." (Exhibit "F")

> "Personnel management officials at Headquarters
> Department of the Army, accepted the general
> conclusion...that historically, black officers received
> lower numerical ratings on OER,s..." (Exhibit "F")

> "Army managers may take relatively precise corrective
> action where disparities in treatment are identified."
> (Page 4, Exhibit "F")

                           e.

Although the Army "Butler Study" identified disparities in
the treatment of black officers and the army directive stated
that "Army managers may take relatively precise corrective action
where disparities in treatment are identified" **(See para 10, page
4, Exhibit "F")**, MILPERCEN discriminated by refusing to take
<u>precise retroactive corrective action</u> to correct the disparity in
my OERs.

                           f.

MILPERCEN conspired not to take **<u>precise corrective action</u>** and

add points to my OER scores to keep from establishing a
precedent, precluding the need for army-wide corrective action
for all black officers because the Army Chief of Staff was quoted
as calling the Butler Study "political dynamite" (See Exhibit
"M").

g.

MILPERCEN has continued to discriminate on the basis of race
in favor of the white male by condoning stereotyping, by race, in
my OERs.  MILPERCEN has refused to remove from my record the
offensive stereotyping by race:

"he is a credit to his race"

"Lieutenant and Mrs. Jones are both assets to their race"

"asset to any social gathering and a asset to his race"

h.

MILPERCEN  conspired and withheld the documents from me that
contained the conversations concerning the remarks (See also [13]
and [14], below).

i.

The OER system violates the due process clause of the 14th
Amendment because MILPERCEN routinely consults with the rating
officials and witnesses without allowing opportunity to cross-
examine or rebut (See Exhibit "V1").

j.

During the appeals process, MILPERCEN secretly talked with
the white rating officer concerning the above stereotyping, and
upheld the white officer's right to stereotype me without
allowing me an opportunity to rebut.  This practice not only
perpetuated the discrimination against me, but it violated my due

18

process.

**k.**

The illegality of this due process violation has risen to the level where it has affected the integrity of MILPERCEN's fact-finding and decisionmaking.

**1.**

Black soldiers are disproportionately overrepresented in all types of unfavorable actions.    MILPERCEN requires an unreasonable and unattainable burden of proof of error to correct an OER; a standard that is artificially high.    The system provides for an insurmountable barrier of never ending requirements for more evidence of error when the system, in fact, is rigged to insure the failure of the applicant and protect the white rater from the outset **(See Exhibits "V1", "V2", "V3", and "V4")**.

**1.**

The OER appeal system perpetuated the discrimination against me since the motives, conduct, and integrity of the rating official could not be challenged, and the MILPERCEN discriminated by upholding this provision at all cost, even when there was a preponderance of evidence and witness testimony that showed otherwise **(e.g. Exhibit N3.4.1) (See also [7], below)**.

**[7]**

**Discrimination in the MILPERCEN OER System continued.**

**a.**

Lt. Col. Shean discriminated in preparing a letter of reprimand and a follow-up OER.    Considering the findings of the Army "Butler Study", had I been white the letter of reprimand for AWOL when, in fact, I was on authorized leave would not have been

**19**

issued, and the very low score in the OER would not have been given, and an appeal to MILPERCEN would not have been necessary.

b.

Although the OER was appealed in the 1970s to MILPERCEN, MILPERCEN implementers supported the white rater, placed the illegal letter of reprimand in my file, and refused to revoke the illegal letter and the resulting OER and remove them completely from my file even though I presented valid evidence  (See also [13b(1)], below).

c.

Had I been white, and had it not been for the unethical due process OER appeal practices of talking with Lt. Col. Shean without the opportunity for rebuttal (See Exhibit "V1"), MILPERCEN would have removed the letter of reprimand and the OER from my files as if they had never occurred  because there was evidence that I was on an authorized leave (See Exhibit "N3.4.1) and not AWOL.

**[8]**
**Discrimination in the MILPERCEN OER System continued.**
a.

Colonel Thomas discriminated and violated the Privacy Act and Army Regulations by obtaining and including unauthorized medical information in my OER (See Exhibits "A1 and A2".  Had I been white Colonel Thomas would not have gone to the extremes to gain unauthorized access to preliminary medical information in my medical files.

b.

Also based on the conclusion of the <u>Army Study of Racial Factors in the Army's Justice and Discharge Systems</u>, that "black soldiers are disproportionately overrepresented in all types of

unfavorable actions", had I been white and had it not been for the unethical due process OER appeal practices (See Exhibit "V1"), MILPERCEN would have removed the OER as if it had never occurred because there was evidence that my medical records were missing from the military hospital during the time that Colonel Thomas was preparing the OER and information from that file was included in my OER in violation of Army Regulations (See Exhibits "A1 and A2".

[9]
Discrimination in MILPERCEN 1980 Lt. Col. (RA) Promotion Board

MILPERCEN discriminated by not placing a black officer on the 1980 Lieutenant Colonel (RA) promotion board that did not consider me qualified for promotion to Lieutenant Colonel (RA) (See List of members, Exhibit "H"). And, MILPERCEN discriminated by removing me from the list of the Regular Army and forcing me out of the U. S. Army when the promotion board was illegally constituted.

It is policy, regulation, and custom of the Army to assign representatives to promotion boards to insure equal opportunity (e.g. a reserve officer to insure that reserve officers received justice...See Exhibit "G", and as the result of the "Army Butler Study", black officers to insure that blacks officers receive justice...See para. d, page 3, "Army Butler Study", Exhibit "F"), a black officer was not assigned to the 1980 Lieutenant Colonel (RA) promotion board that did not consider me qualified for promotion.

PART III
## The Army Board for Correction of Military Records (ABCMR)
[10]

Because of all of the above and because of General Officer reactions to my situation (See Exhibits "C" and "D"), five (5) applications challenging the systemic discrimination against me were timely filed with the ABCMR in 1974, 1975, and 1976 (See Exhibit "E"). Although many inquiries were made to the ABCMR (See Exhibits "E", "Q", "R", "S", "T", and "U"), the ABCMR refused to provide due process by failing to act on the 1974, 1975, and 1976 applications. Subsequent appeals to the ABCMR in the 1980s also failed to produce action on the 1974, 1975, and 1976 applications:

a.

It has already been upheld in an appellate decision <u>Baxter v. Clayton</u>, 652 F. 2d. 181 (D.C. Cir. 1981) that it is illegal for a military board not to act on applications for the correction of a military record (See Exhibit "A4").

b.

Although the ABCMR had a nondiscretionary, judicially enforceable duty pursuant to 10 U. S. C. Section 1552 to exercise its power to act on my applications for the correction of military records in 1974, 1975, and 1976, the ABCMR discriminated by not acting because the Army Chief of Staff was quoted as calling the Butler Study "political dynamite" (See Exhibit "M").

c.

The ABCMR had the ability to correct the record, when information was forwarded to it on April 19, 1976 by the Office of the Inspector General and Auditor General (See Exhibit "T").

22

d.

The ABCMR failed to exercise its power in the 1970s even though the ABCMR had been advised that it had not acted (See Exhibits "M", "M1", "N", "N1", and "O") (See [13b(1)], below).

e.

MILPERCEN and the ABCMR jointly perpetuated an 18 year pattern of discrimination because the ABCMR refused to act the MILPERCEN failures. Because of this failure to act, the discrimination that had been compounding itself from 1959 to 1974, further compounded itself from 1974 to 1980 resulting in a desperate impact that prematurely ended my military career on September 30, 1980.

f.

Had the ABCMR acted timely and had it not illegally withheld information from me, the ABCMR would have prevented my forced retirement from active duty.

g.

And, the ABCMR's failures also prevented selection for schooling at the War College, selection for promotion to Col., selection for assignment as a brigade commander, and selection for promotion to a rank equal to the highest rank held by any white 1959 contemporaries.

[11]

Like MILPERCEN and even though there was an Army conclusion that black soldiers are disproportionately overrepresented in all types of unfavorable personnel actions, there was no ABCMR commitment to correct for the past effects of discrimination to bring about complete equality in assignments, OER system, and the

OER appeal systems:

a.

The ABCMR discriminated and violated Army policy (See page 4, para. 10, Exhibit "F"), by not taking the precise corrective action where disparities in treatment had been identified by the Army "Butler Study". It discriminated by not adding the 20 to 25 points to all OER scores from 1959 to 1974 to make up for the reported deficit even though it had a judicially enforceable duty to correct for the past effects of discrimination.

b.

The ABCMR conspired not to act and take **precise corrective action** because the Army Chief of Staff was quoted as calling the Butler Study "political dynamite" (See Exhibit "M"), to keep from establishing a precedent, thereby precluding the need for army-wide corrective action for all black officers .

c.

The ABCMR implementers compounded the discrimination of Lt. Col. Shean and MILPERCEN by failing to act on whether or not the authorized leave invalidated the letter of reprimand for AWOL and the resulting OER. <u>Mere modification or reorganizing it to another part of the file will be insufficient to correct for the damage done</u>. If I were white, the letter of reprimand, the resulting OER, and the other errors would be completely purged from the record.

d.

The ABCMR also failed to act on whether or not the OER issued by Col. Thomas was invalid because it violated the Privacy Act and Army Regulations.

**[12]**

While it is policy, regulation, and custom of the Army to assign representatives to promotion boards to insure equal opportunity, and although the ABCMR promoted and reinstated reserve officers because no reserve officers were on a promotion board, and although Army policy requires a black on promotion boards, and although  MILPERCEN records show that Colonel Richard L. Cary was the black member on the 1979 Lieutenant Colonel (RA) board,  **(See List of members, Exhibit "H")**, the ABCMR compounded the discrimination by not deciding whether or not a black officer was assigned to the 1980 Lieutenant Colonel (RA) promotion board that did not consider me to be qualified for promotion:

a.

The ABCMR discriminated by failing to exercise its power pursuant to 10 U. S. C. Section 1552  and  promote me, as it had done for reserve officers when it found that there were no reserve officers  on a  promotion board **(See Exhibit "G")**, if a black was not on the board as mandated **(See para. d, page 3, "Army Butler Study", Exhibit "F")**,.

b.

While there were seven (7) blacks available to be on the ABCMR panels in the 1980s that failed to decide the above issues, the ABCMR failed to assign a black to any of my 1980s ABCMR panels. **(See Exhibit "I")**.

c.

During the 1980s application process the all white ABCMR boards considered  **"he is a credit to his race"**, **"Lieutenant and Mrs. Jones are both assets to their race"** , and **"asset to any**

25

social gathering and a asset to his race" to be complimentary even though an Army Special Review Board (SRB) had advised them that the terms were innocuous and superfluous.

[13]
a.

The ABCMR process, like the MILPERCEN OER appeal system, requires an artificially high, unreasonable, unattainable burden of proof of error to correct the record. And, if the standard neared, the sufficiency of evidence of errors can be raised on the whim of the ABCMR implementers.

b.

Had I been white the sufficiency of evidence of errors needed to correct a record would not have been insurmountable, and the ABCMR justice implementers would not have obstructed justice by requiring me to carry their unreasonable burden of proof while, at the same time, they were illegally withholding form me the following evidence of error found by an Army Special Review Board (SRB) (See also [14], below):

(1)

"The SRB finds no evidence that the ABCMR acted on his first application..." (5)

(2)

"...the applicant has raised some valid issues about his OMPF..."10)

(3)

"The applicant has submitted sufficiently compelling evidence which would warrant alteration of the contested OER and corrections to his OMPF". (10).

(4)

"a credit to your race" were innocuous and superfluous. (7)

(5).

"...an administrative letter of reprimand was erroneously filed in the commentary and disciplinary portion of his `P' fiche...the letter could have disadvantaged the applicant when considered by selection boards". (2)  "This gives the letter of reprimand an an official appearance which *it did not deserve*" (10). "By including this piece of appeal correspondence...it appears that the applicant received the letter of reprimand and that it was authorized..."  (9.7).  "A copy of the local letter of reprimand...should have also been transferred with the appeal correspondence"  "This may have disadvantaged the applicant when last considered for promotion" (10/9/2).  "...a cursory reader [selection boards] would not be expected to detect the fact that the letter...is not an official entry on appellant's OMPF" (10).

(6)

"The SRB agrees with the applicant that one sentence is ambiguous and could be read as a faulting comment i.e. , the sentence in the raters narrative which begins `In spite of much indifference and delays". (9.9).

(7)

"applicant has raised some valid issues about his OMPF, SRB notes that appeal procedures do not provide for purging of OERs. (10).

(8)

"The indorser also opinioned that the conflict between the rater and applicant was not completely applicant's fault..."  (6.b)..

(9)

"In spite of much indifference and delays – can be interpreted as meaning something other than may have been intended". (9.7).  "In spite of much indifference and delays" is ambiguous and could read as a faulting comment. (9.9).

(10)

The SRB informed the ABCMR that the modification of OER 1 Aug 72- 2 July 73 was required  (10).

(11)

The SRB recommended "Transfer the letter of reprimand...to "R" fiche".  (10).

27

(12)

The SRB recommended "Remove appeal correspondence from "P" fiche...as well as frames E-2,3,4 from P-2 fiche which were missed filed by MILPERCEN." (10).

[14]

Because the above essential information was illegally withheld from me by Mr. Matthews, for Memoranda of Consideration for June 29, 1983, April 25, 1984, and March 27, 1985, the memoranda were predisposed and they were only issued as a RUSE to cover-up a discriminatory purpose and intent, and to cover-up the reasons for the ABCMR not acting on my 1974, 1975, and 1976 applications :

a.

The ABCMR had a regulatory obligation, per Army Regulation 15-185, Section II, paragraph 10e,  and Section VI, 21b(1)(d) (See Exhibit "A", pages 4 and 6 ), to provide all essential facts upon which the denial is based, attach them to the Memorandum of Consideration, and promptly furnish them to applicant.

b.

The Mr. Matthews knowingly and willingly conspired to violate Army Regulations by not providing me with the above information (See also [13b(1)], above) contained in staff advisory opinions for ABCMR Memoranda of Considerations for June 29, 1983, April 25, 1984 and March 27, 1985.

c.

By withholding the information from me, the ABCMR made the entire 1980s application process an exercise in futility...a series of useless acts.  Regardless of what I submitted, I would never reach the unreasonable and unattainable level of evidence

28

because the ABCMR was concealing much of the information needed to sustain my claims.

d.

Considering that the implementers already had in their possession and hide from me a preponderance of 12 errors (16 when individually tallied) found by the Army Special Review Board (SRB), in and of itself, was discriminatory.

e.

The ABCMR has yet to release Staff advisory opinions for Memorandum of Consideration for March 27, 1985. Information for Memoranda of Consideration for June 29, 1983 and April 25, 1984 was released only after the ABCMR was forced to release it on June 11, 1984, under the Freedom of Information Act (FOIA).

f.

Mr. Matthews knowingly and willingly conspired to conceal the fact that the ABCMR had not acted in the 1970s by withholding the documents because in the documents provided the SRB stated that "The SRB finds no evidence that the ABCMR acted on his first application..." (See also [13b(1), above), and he withheld the information because the SRB had validated many of my contentions made in the 1970s applications as being true.

g.

In spite of the fact that my September 26, 1984 appeal was pending before the ABCMR, when Mr. Matthews was questioned by me, on February 28, 1985 Mr. Matthews seized upon the pretext of the moment to cover-up by intimidating me  by ordering me out of the ABCMR process into federal court (See Exhibit "B").

29

h.

The decision of Mr. Matthews has had a chilling effect on due process.    Mr. Matthews, by sending me into federal court, also foreclosed on any entitlement in Section II, 10b in that I have the privilege to submit newly discovered relevant evidence for consideration (See page 3, Exhibit "A").

[15]

The ABCMR knowing that it had not acted on my 1974 and 1975 applications covered up the fact that I had used the Army "Butler Study" to support my claims by including me in with the Promotion Research Committee (PRC) "Relook" promotions as a <u>RUSE to keep from acting on my 1974, 1975, and 1976 applications</u>   (See Exhibits "G", "K", and "L"):

a.

<u>The ABCMR promoted me under the PRC application and provided no decision on my five (5) applications,</u> because the ABCMR did not want to invite any additional bad press " (See Exhibits "M", "N", and "O") concerning the findings of the Army "Butler Study".

b.

The PRC "Relook" promotion was unrelated to my claims, and it did not solve the problem of no infantry assignments since 1962, the problems determined by the Army "Butler Study", among others (Relook was the result of an application filed by Major Douglas L. Maxfield on the point that there were no reserve officers on the promotion board, See Exhibit "G", not the discrimination found by the "Butler Study" Exhibit "P")..

c.

The PRC promotion was a "cover-up" effort  that did not

30

correct the record and  make me whole.   The PRC promotion still left my records uncorrected and subjected me to a continuation of discriminatory interpretations against me from 1976 and 1980  for command assignments, schools, and promotions  by Army selection boards.  The consequences and full impact of the "cover-up" effort was finally felt on  September 30, 1980 when I was forced out of the Army as an unqualified undesirable:

### (1)

On July 12, 1976 I was informed that  I had been recommended for promotion to Lieutenant Colonel by the 1974 "Relook" Lieutenant Colonel Promotion Selection Board **(Exhibit "K")**

### (2)

On July 20, 1976 **(Exhibit "K")**, I was notified that as the result of the PRC "Relook" I was being promoted to Lieutenant Colonel (AUS).

### (3)

On September 16, 1976 **(Exhibit "L")** the Board notified me that my records **had only been corrected to show** that I was promoted as the result of the Promotion Research Committee (PRC) "Relook"  Board.

### [16]

The ABCMR discriminated by failing to act on my 1974, 1975, 1976 applications to retroactively provide for equal opportunity in assignments from 1962 to 1974, and it also failed to take corrective action to provide equal opportunity for infantry assignments from 1974 until 1980.  The ABCMR also failed to act on the  infantry and MISO knowledge, skills, ability, and experience assignments  questions during the application process

in the 1980s.  The ABCMR covered up the fact that the white MILPERCEN implementers were discriminating, lying, misleading, and operating according to a "hidden agenda" using the secret personnel file.

There was a conspiracy nexus between the above and the ABCMR, for 13 years, not acknowledging that my 1974 and 1975 applications existed.  And, there was a conspiracy nexus between all of the above and the lies told by the Executive Secretary for the ABCMR, Mr. Karl Bielenberg:

a.

On November 27, 1985 a series of lies were told about the disposition of my 1974 and 1975 applications by Mr. Bielenberg (Exhibit "P") to Senator Sam Nunn in an effort to continue the cover-up.  He also lied to cover-up that information had been withheld from me by the ABCMR during deliberations on my 1983 application and my 1983 appeals.  The first cover-up lie told by Mr. Bielenberg:

> "LTC Jones was promoted to the grade of LTC on one application and the other application was closed administratively."
> (1)

There were five (5) applications submitted (See Exhibit "E").

(2)

Any of my  1974, 1975, and 1976 applications being administratively closed as the result of the class action application filed by Maj. Douglas L. Maxfield is an illegal, unilateral decision by ABCMR staff support personnel and not a decision made by a properly constituted ABCMR panel pursuant to the expressed statutory jurisdiction in 10 U. S. C. Section 1552.

32

b.

### Mr. Karl Bielenberg told a second cover-up lie:

> "Had LTC Jones made an inquiry at that time as to the status of his remaining applications, he would have been advised that the Board **had no record of receiving them**".

(1)

Secondly he lied that I made no inquires.  **Exhibit Pl** shows he is lying.  Also I had made many inquiries to the ABCMR, Exhibits **"E"**, **"Q"**, **"R"**, **"S"**, **"T"**, and **"U"**.

(2)

Also, the SRB advised the ABCMR: "The SRB finds no evidence that the ABCMR acted on his first application..."

c.

While Mr. Bielenberg stated above that he "had no record of receiving them", there is no way he could also state in the same letter, unless he was lying to cover-up something, that:

> "[LTC Jones] has requested essentially the same correction of his records **as he did in his 1974 and 1975 applications...**".

d.

The integrity of Mr. Bielenberg  rises to the level where it affected the integrity of the agency's fact-finding and decisionmaking.

[17]
**PART IV**
**Relief To Be Granted**

I have no adequate or complete remedy in the Army or at law to redress the wrongs alleged herein, and this suit for declaratory judgment, reinstatement, promotion to a rank equal to the the highest rank held by any of my white contemporaries from the 1959 year group, and back-pay and allowances is my only means for

33

securing adequate relief.  I am now suffering and will continue to suffer irreparable injury from the defendant's policies, practices, procedures, customs and usages as set forth herein.

[18]

WHEREFORE, I respectfully pray that this Court:

A.    Grant  a jury trial on this matter.

B.  Grant a declaratory judgment that the actions of defendants complained of herein are contrary to and in violation of the rights guaranteed by Title VII of the Civil Rights Act of 1964, 42 U. S. C. 2000e, et seq., and the Civil Rights Act of 1866, 42 U. S. C. 1981, 1983, and 1988.

C.  Grant me a permanent injunction prohibiting the defendants, its agents, successors, employees and those in active concert or participation with it from engaging in the policies and practices complained of herein or any other racially discriminatory practice in violation of Title VII of the Civil Rights Act of 1864, 42 U. S. C. 2000e, et seq., the Civil Rights Act of 1866, 42 U. S. C. 1981, 1983, 1988, 10 U. S. C. Section 1552, Section II, paragraph 10e, Army Regulation 15-185 and Section VI, Action on Applications, 21b(1)(d).

D.  Grant me full relief in the amount representing due compensation lost by me as the result of defendant's acts and practices, and grant full relief from the effects of defendant's past discrimination, including:

**Corrections to be made to the record from 1959 to 1974:**

(1)

Remove OERs 09/14/60 to 11/30/60, 12/01/60 to 04/02/61,

34

and 12/01/61 to 02/17/62 from my record.  They stereotype by race
and the race of my wife.

(2)

Remove the letter of reprimand, the OER written by Lieutenant
Colonel Shean for 08/01/72 to 07/02/73, and all appeal
correspondence from the record.  All are are not necessary when,
in fact, I was on authorized leave (DA 31) and the SRB  has found
the letter of reprimand to be discriminatory. (See also [7] and
[12d(1)(e), above).

(3)

In the place of the removed OERs substitute OERs with scores
equal to the scores that white officers received as per the
"Butler Study".   Using  the  Army  "Butler  Study  as  the
"identifying source", add points to all other OERs from 1959 to
1974  in accordance with Army policy is that "Army managers may
take relatively precise corrective action where disparities in
treatment are identified" (Page 4, Exhibit "F"), to correct for
the past effects of discrimination in the OER scores.

(4)

Remove any and all OER appeal correspondence from the record.

(5)

Retroactively apply all corrections to my record found by the
SRB to correct for the past effects of the ABCMR not acting in
1974, 1975, and 1976.

(6)

Based on the new OER scores retroactively  construct new OML
rankings to correct for the past effects of discrimination in OER
scores.  Then, retroactively construct a new career pattern for
1962 to 1972 from the "slow" lane to the "fast" lane with

35

favorable infantry and command assignments, schooling and promotions, including 5% promotions.  The new career pattern is to appear as it would have been had the past effects of discrimination in OER scores and OMLs not been present and had I not been placed in the "slow" career lane as the result of the OERs and the OML.

(7)

Prepare retroactive OERs for the infantry and command assignments for 1962 to 1972 to correct for the past effects of discrimination in OER scores.

(8)

Apply retroactive constructive credit for infantry, command and school assignment delayed or missed as the result of being held on ROTC duty beyond agreed period of two years.

(9)

Then, in accordance with paragraph 19 (4) (e) (1) (b), Section VI, AR 15-185 retroactively correct the record to correct for the past effects of discrimination in OER scores.

### Corrections to be made to my records for 1974 to 1988:

(1)

Remove the OER prepared by Col. Grace Gay Thomas for 06/11/77 to 06/10/78 in that it resulted from the stigma (See Exhibit "N1") of the PRC Re-look, late Command and Staff College attendance when the ABCMR failed to act on my 1974, 1975, and 1976 applications, and it was based on illegally obtained medical information by Col. Thomas in violation of the Privacy Act and unauthorized medical information in violation of Army Regulations 40-42 and 623-105 (Exhibits "A1" and A2").  Retroactively

36

replace it with an OER containing narratives and scores that will compare with OERs of white officers.

(2)

Remove any and all OER appeal correspondence from the record.

(3)

Validate all other OERs from 1974 to 1980  to determine if the  recurring phenomenon revealed by the U. S. Army "Butler Study" that "...historically black officers received lower numerical ratings on OERs than did white officers" is a continuing phenomenon from 1974 to 1980, and where they do not compare favorably with OERs of white officers for this period, as per the "Butler Study" (Page 4, Exhibit "F")  take the precise corrective action  and retroactively add points to all my OER scores from 1974 to 1980  to correct for the continuing effect of discrimination in the OER scores.

(4)

Construct a new retroactive  pattern of schooling for 1974 to 1988 to correct for the past effects of discrimination in OER scores.  The new pattern is to appear as it would have been had the systemic discrimination and disparities in the OERs and OMLs not been present.

(5)

Based on the schooling, construct a new  retroactive pattern of impressive and important BN/BDE/Command assignments missed as the result of my incorrect records containing errors and the past effects of discrimination in OER scores being submitted to command selection boards by MILPERCEN from the time of promotion to Lieutenant Colonel AUS to 1 March 1979.

37

(6)

Prepare retroactive OERs for the infantry and command assignments from 1972 to 1980 to correct for the past effects of discrimination in OER scores.

(7)

Apply retroactive constructive credit for infantry and command assignments correct for the disadvantages caused by the unwarranted Letter of Reprimand  and OERs  held in my file from 1972 to 1980.

(8)

Construct a new retroactive pattern of schools and command assignments for the assignment of the specialty of Management Information Officer, and apply constructive credit to the record to correct for the past effects of discrimination in OER scores.

(9)

Apply retroactive constructive credit for any accelerated attendance at schools and of below the zone promotions that may have been received had it not been for the 1959 - 1974 disparities to correct for the past effects of discrimination in OER scores.

(10)

Under the provisions of 19 (4) (e) (1) (c), Section VI, 23, 24a and 25, Section VIII, and 2 (c) Section I and to correct for the past effects of discrimination in OER scores promote, retroactively, and retire me at the highest rank that has been attained by any white officer from my 1959 year group or a later year group, which ever is the highest rank.

E.  Reinstatement representing the amount of due compensation for all pay and allowances lost, limited, or not received as the

38

result of defendant's acts and practices from 1959 to 1988;

F.   Grant $200,000.00 under the Privacy Act for violation of
confidentiality of medical information under Army Regulations 40-
42 and 623-105.

G.   Grant such other relief, including retroactive seniority,
back-pay, front pay, as is necessary to make me whole.

H.   Retain jurisdiction for a period sufficient to assure
full compliance with the terms of the decree prayed for herein
and all other requirements of federal and state law, and during
the period of such retained jurisdiction require full and regular
reporting of information pertaining to such compliance.

I.   Award me the costs of this action together with
reasonable attorney's fees for any attorney entering the case on
my behalf as provided in 706 (k) of the Civil Rights Act of 1964,
as amended.   42 U. S. C. 2000e-5 (k).

J.   For the following, grant to me judgment against defendant
ABCMR and the Department of the Army general and punitive damages
in the amount of $350,000.00 per year for the suffering, anguish,
and emotional distress caused by defendants not taking precise
corrective action from 1959 to 1988 to upgrade my OERs and for
not making a sincere commitment to bring about complete equality
to correct for past effects of discrimination  as the result of
the identified pattern of disparities in treatment revealed by
the Army "Butler Study"; for defendants not providing qualifying
infantry assignments from 1962 to 1980 that would produce the
necessary knowledge, skills, and abilities to insure that the
opportunity was available for me to acquire and maintain the

necessary qualifications for promotions and retention on the active list for Regular Army; for defendants not acting on my five (5) applications in 1974, 1975, and 1976 through the date of this filing; for defendants not timely correcting the record with those SRB errors and disparities reported to it on four separate occasions (October 21, 1974, June 5, 1975 by the SRB, once by Col. McSpadden on May 25, 1983, and once by me on September 26, 1984); for defendants failing to assign a black to the 1980 Lieutenant Colonel (RA) promotion board as required by Army policy, and the ABCMR not determining if a black was, in fact, not assigned; and for not assigning, when seven (7) blacks were available for assignment, a black to any of the three (3) ABCMR panels that decided my case in the 1980s; for defendants making the application process an exercise in futility for me for eleven (11) years, and to cover-up the fact that they had not acted for eleven (11) years;; and for defendants withholding information from me for fourteen (14) years to defeat my claims and to perpetuate the cover-up.

K. Grant to me judgment against Mr. John W. Matthews, individually and in his capacity for general damages in the amount of $250.000.00 for emotional distress, and punitive damages in the amount $250,000.00 for conspiracy not to provide me with the information required by law and Army Regulations 15-185, 10e, Sec II, Exhibit A, and judgment against Mr. Karl Bielenberg, individually and in his capacity for general damages in the amount of $250.000.00 for emotional distress, and punitive damages in the amount $250.000.00 for conspiracy cover-up for the illegal acts of Mr. Matthews, by providing misinformation to a U.

S. Senator in an attempt to perpetuate the cover-up of the ABCMR's failure to act on my five (5) applications.    K. Grant me such further, additional and alternative relief as the needs of justice may require.

Respectfully submitted,

Roland A. Jones
232 52 3133
Lieutenant Colonel, U. S. Army
(Retired)
Pro se and not a lawyer

1390 Heatherland Dr.
Atlanta, GA 30331
(404) 344-1332

### CERTIFICATE OF SERVICE

I certify that I have served one (1) copy of the foregoing to the Honorable John O. Marsh, Secretary of the Army, Major General Donald W. Jones, Commander Total Army Personnel Agency (a.k.a. MILPERCEN), Mr. Karl Bielenberg and Mr. John W. Matthews, the Army Board for Correction of Military Record (ABCMR), by mail on this 1st day of April , 1988.

Roland A. Jones
Lt. Col. U. S. Army (Retired)
Pro se and not a lawyer

Exhibit 5

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 17 1988

LUTHER D. THOMAS, Clerk
By:
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND A. JONES,                    :

        Plaintiff,                  :        CIVIL ACTION

v.                                  :        1:88-CV-727-MHS

SECRETARY OF THE ARMY,              :
et al.,
                                    :
        Defendants                  :

RECEIVED

OCT 13 1988

U.S. ATTORNEY
ATLANTA, GA.

<u>ORDER</u>

Presently before the Court is the magistrate's report and
recommendation dismissing plaintiff's claims under Title VII of
the Civil Rights Act of 1964 and denying plaintiff's motion for
default.  Plaintiff has challenged the magistrate's
recommendations and objected to the magistrate's description of
events that produced this controversy.  The Court finds that the
magistrate correctly concluded that Title VII does not apply to
cases involving military personnel.  In this context, the facts
are irrelevant.  Title VII simply does not authorize suits
involving military personnel.  <u>Stinson v. Hornsby</u>, 821 F.2d 1537
(11th Cir. 1987).  Likewise, the Court agrees that an entry of
default would be inappropriate.  Defendants dispute plaintiff's
contentions that their response was untimely; regardless, the
Court believes that defendants should be allowed to respond to
plaintiff's claims.

    For the foregoing reasons, the Court ADOPTS AS ITS ORDER
the report and recommendation of the magistrate.  The Court

72A
(. 8/82)

further DIRECTS the magistrate to address plaintiff's remaining claims and defendants' motion to dismiss those claims.

IT IS SO ORDERED, this _17th_ day of October 1988.

Marvin H. Shoob, Judge
United States District Court
Northern District of Georgia

ENTERED ON DOCKET

OCT 17 1988

L.D.T., CLERK

BY          DEPUTY CLERK

2

2A ⊕
8/82)

**25**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 2 8 1989

LUTHER D. THOMAS, Clerk
By: _____
                    Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND A. JONES,                    :

    Plaintiff,                     :        CIVIL ACTION

v.                                  :        1:88-CV-727-MHS

SECRETARY OF THE ARMY,              :
et al.,
                                    :
    Defendants

<u>ORDER</u>

Plaintiff Roland A. Jones ("Jones") claims he was denied assignments necessary for promotion because of his race and, as a result, was forced to retire from the United States Army after twenty-one years of service. By an order dated October 17, 1988, the Court adopted the report and recommendation of the magistrate dismissing plaintiff's claims under Title VII of the Civil Rights Act of 1964. Because the magistrate was already familiar with plaintiff's complaint, the Court directed the magistrate to address the remainder of defendants' motion to dismiss. The magistrate subsequently prepared a second report and recommendation, which was released January 10, 1989. The magistrate suggested that the Court dismiss all of plaintiff's claims, except those against defendants John W. Matthews ("Matthews"), Karl Bielenberg ("Bielenberg") and the Army Board for Correction of Military Records ("ABCMR"). The Court has now conducted a <u>de</u> <u>novo</u> review of the entire file and its rulings on the various pending motions hopefully will facilitate efficient resolution of this matter.

AO 72A
(Rev. 8/82)

**BACKGROUND**

    Plaintiff is a black male who was employed by the United States Army from June 1, 1959 until September 30, 1980. He was forced to retire from the armed forces after obtaining the rank of lieutenant colonel, because he was not qualified for further promotion. As stated above, he claims his forced retirement resulted from a systematic policy of denying black officers the assignments necessary to qualify for promotion.

    Plaintiff alleges several causes of action in his pro se complaint. First, plaintiff claims the ABCMR refused to correct errors in his military records. He seeks review of that action in this Court. Second, plaintiff maintains that Matthews, Bielenberg and the ABCMR refused to correct the alleged errors in his file because of racial discrimination prohibited by 42 U.S.C. §§ 1981, 1983 and 1985. Third, plaintiff argues that the Secretary of the Army, the Department of the Army and the Army Personnel Agency (collectively "the Army") violated Title VII of the Civil Rights Act of 1964 by discriminating in employment based on race. The Court previously ruled that plaintiff could not proceed on this cause of action based upon Stinson v. Hornsby, 821 F.2d 1537 (11th Cir. 1987), cert. denied, 109 S. Ct. 402 (1988). Fourth, plaintiff insists the Army violated 42 U.S.C. §§ 1981, 1983 and 1985 by denying him the opportunities necessary for further promotion within the armed forces.

2

AO 72A ⊕
(Rev. 8/82)

Finally, plaintiff asserts that the Army violated the Privacy Act, 5 U.S.C. § 552a, by failing to protect the confidentiality of his medical records.

Plaintiff's complaint exceeds forty pages and includes over eighty pages of supporting exhibits. The Court, like the magistrate, has spent considerable time reviewing every page of the materials he submitted. Because plaintiff is a pro se litigant, the Court has construed his complaint liberally, Haines v. Kerner, 404 U.S. 519 (1972), and has sought to identify each cause of action contemplated by the complaint. Plaintiff does not assist the Court, however, with his vitriolic and verbose pleadings. Moreover, plaintiff's preoccupation with legible signatures is absurd.[1]

## ADEQUACY OF SERVICE OF PROCESS

In addition to the motion to dismiss considered by the magistrate, defendants have filed a separate motion in which they contend that the Court should dismiss defendants Matthews

---

[1] In a letter dated March 23, 1989, Jones complained that the signature on a Court of Appeals order signed by Judge Tjoflat was unreadable. In the same letter, Jones questioned the authority of a single appellate court judge to sign an order on behalf of a three-judge panel. In a petition filed in this Court on April 12, 1989, Jones requested certification pursuant to Rule 54(b) of the Federal Rules of Civil Procedure so that the Court of Appeals could determine whether there was any impropriety in the signing of this Court's October 17, 1988 order, which he termed a question "of exceptional importance." The Court assures plaintiff that there was no impropriety in the signing of its October 17, 1988 order, nor will there be any error in the signing of this order.

3

and Bielenberg based on inadequate service of process.
Defendants concede that plaintiff attempted to serve Matthews
and Bielenberg by mail pursuant to Rule 4(c)(2)(C)(ii) of the
Federal Rules of Civil Procedure.  Defendants argue, however,
that plaintiff was required to provide personal service pursuant
to Rule 4(d)(1) of the Federal Rules of Civil Procedure, because
Matthews and Bielenberg did not acknowledge receipt of service.
Defendants' position is technically correct, but the Court will
not order dismissal of a pro se complaint on this basis.

Dismissal based on inadequate service is "inappropriate
unless otherwise a party's rights would be seriously prejudiced
or no conceivable means of acquiring jurisdiction over the
defendant[s] remains." Miree v. United States, 490 F. Supp.
768, 776 (N.D. Ga. 1980) (citing Stanga v. McCormick Shipping
Corp., 268 F.2d 544, 554 (5th Cir. 1959)).[2]  The Court does not
believe defendants' rights will be prejudiced absent dismissal,
nor is it aware of any problem concerning jurisdiction.  The
Court therefore will deny defendants' motion to dismiss based on
inadequate service and will direct plaintiff to provide personal
service to defendants Matthews and Bielenberg pursuant to Rule
4(d)(1) of the Federal Rules of Civil Procedure.

---

[2]  In Bonner v. City of Prichard, Ala., 661 F.2d 1206 (11th
Cir. 1981), the Eleventh Circuit adopted as binding precedent
all cases decided by the Fifth Circuit before September 30, 1981.

4

AO 72A
(Rev. 8/82)

## CLAIMS BASED ON MILITARY RECORDS

Plaintiff seeks relief from defendants Matthews, Bielenberg and the ABCMR based on their refusal to correct alleged errors in his military records. Plaintiff claims that Matthews and Bielenberg, respectively the past and present executive secretaries of the ABCMR, are the individuals ultimately responsible for refusing to correct the alleged errors. The magistrate concluded, and the Court agrees, that plaintiff has stated a cause of action against these defendants. The decisions of the ABCMR are subject to judicial review under an "arbitrary or capricious" standard based on the Supreme Court decision in Chappell v. Wallace, 462 U.S. 296, 303 (1983). The Court therefore will deny defendants' motion to dismiss Jones' claims for correction of errors in his military file.

Plaintiff also seeks relief from defendants Matthews, Bielenberg and the ABCMR because he claims their refusal to correct errors in his file was motivated by racial animus. The Court believes that Jones might be entitled to damages against defendants based on this claim, but cautions plaintiff that the damages he can recover from these defendants would be limited to compensation for harm resulting from any failure to correct errors in his military records.[3] The Court further notes that plaintiff cannot proceed based upon 42 U.S.C. § 1983, because he

_____

[3] The Court does not construe plaintiff's complaint as stating that plaintiff's involuntary retirement occurred as a result of the failure to correct errors in his military record.

5

AO 72A   ⊕
(Rev. 8/82)

alleges actions by defendants under color of federal law and 42
U.S.C. § 1983 provides a remedy only for deprivation of rights
under color of state law.  See Martin v. Heckler, 773 F.2d 1145,
1154 (11th Cir. 1985) (en banc) (citations omitted).  The Court
therefore will deny defendants' motion to dismiss plaintiff's
claims against defendants Matthews, Bielenberg and the ABCMR
pursuant to 42 U.S.C. §§ 1981 and 1985, but will grant
defendants' motion to dismiss plaintiff's claims under 42 U.S.C.
§ 1983.

## CLAIMS BASED ON ALLEGED INSTITUTIONAL DISCRIMINATION

Plaintiff seeks relief from the Army because he alleges he
was denied assignments necessary for promotion due to racial
discrimination.  The magistrate concluded that plaintiff's
claims against the Army were barred by the Supreme Court's
holdings in Chappell v. Wallace, 462 U.S. 296 (1983), and United
States v. Stanley, 483 U.S 669 (1987).  The Court agrees that
plaintiff cannot proceed against the Army, but believes that the
magistrate should have further scrutinized plaintiff's claims
based on the Eleventh Circuit's holding in Stinson v. Hornsby.

In Chappell v. Wallace, the Supreme Court refused to allow
enlisted military personnel to maintain a suit against their
superior officers for violations of constitutional rights.  Like
the present case, Chappell involved allegations that plaintiffs
received undesirable military assignments because of racial

6

discrimination.  The Court held that the "unique disciplinary structure of the Military Establishment and Congress' activity in the field" precluded suit, Chappell, 462 U.S. at 304, notwithstanding the Court's previous holding in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

At the same time, the Supreme Court stated in Chappell that "this Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." Chappell, 462 U.S. at 304.[4]  Based on this language, the Eleventh Circuit held in Stinson that allegations of constitutional violations in the military must be tested by the standard established in Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971).  Stinson, 821 F.2d at 1541.[5]  Under Mindes a district court must determine first whether the allegations involved warrant judicial review of internal military affairs.  Plaintiff meets this part of the Mindes test, because he alleges

---

[4]  The Supreme Court in United States v. Stanley held that Chappell would permit "redress designed to halt or prevent the constitutional violation rather than the award of money damages." Stanley, 107 S. Ct. at 3063.

[5]  Based on the concurring and dissenting opinions in Stinson, the magistrate refused to apply the Mindes standard. The Court does not believe, however, that it can similarly disregard the majority opinion in Stinson.  Moreover, the magistrate erred when he concluded that Chappell authorized dismissal of plaintiff's claims based on 42 U.S.C. § 1985.  In Chappell the Supreme Court declined to reach the issue of whether a suit against military officials could be brought for violations of 42 U.S.C. § 1985.  Chappell, 462 U.S. at 305, n.3.

7

AO 72A
(Rev. 8/82)

violations of constitutional rights and exhaustion of intra-
service corrective measures.  <u>Mindes</u>, 453 F.2d at 201.

Under the second part of the <u>Mindes</u> test, however, "[a]
district court faced with a sufficient allegation must examine
the substance of that allegation in light of the policy reasons
behind nonreview of military matters."  <u>Id.</u>  Among those
considerations are the "type and degree of anticipated
interference with the military function" and the "extent to
which the exercise of military expertise or discretion is
involved."  <u>Id.</u>  Plaintiff does not meet this part of the <u>Mindes</u>
test, because review of his claims would be inconsistent with
the need for judicial deference in military matters.

The Court finds that review of plaintiff's assignments
within the military would constitute unacceptable interference
with the military function.  "Judges are not given the task of
running the Army."  <u>Orloff v. Willoughby</u>, 345 U.S. 83, 93
(1953).  The military cannot fulfill its essential duties amidst
the disruption that would accompany federal court consideration
of whether individual officers should have received infantry
assignments.  Moreover, the Court believes that it would be
inappropriate to substitute its views concerning plaintiff's
assignments for the considered and professional judgment of the
military.  As the Supreme Court has held repeatedly:

> [I]t is difficult to conceive of an area of
> governmental activity in which the Courts have less

8

competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments. . . .

Gilligan v. Morgan, 413 U.S. 1, 10 (1973). The Court cannot conclude that plaintiff has never suffered discrimination during his long military career. Nevertheless, the Court cannot on that basis alone justify judicial review of all of his Army assignments. The Court will grant defendants' motion to dismiss plaintiff's claims of institutional discrimination by the Army.


## CLAIMS BASED ON THE PRIVACY ACT

Plaintiff also seeks relief against the Army based on the Privacy Act, apparently because information from his medical records was included in his officer evaluation reports. As the magistrate indicated, however, Army regulations allow evaluators to comment on an officer's physical condition. Moreover, as the magistrate also concluded, there is no indication that plaintiff has sought administrative remedies for these claims. The Court therefore agrees with the magistrate that defendants' motion to dismiss plaintiff's Privacy Act claims should be granted.


## CONCLUSION

In summary, plaintiff may pursue his claims concerning errors in his military record, including his allegations that the errors were not corrected because of racial discrimination. Plaintiff will not be allowed to pursue his remaining claims. The Court also informs plaintiff that it will not certify this

9

AO 72A
(Rev. 8/82)

order or its October 17, 1988 order as final judgments pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

The Court DENIES IN PART and GRANTS IN PART defendants' motion to dismiss.  The motion to dismiss is denied as to the claims involving errors in plaintiff's military records against defendants John W. Matthews, Karl Bielenberg and the Army Board for the Correction of Military Records.  The motion to dismiss is also denied as to plaintiff's claims under 42 U.S.C. §§ 1981 and 1985 against those defendants.  The motion to dismiss is granted as to all of plaintiff's claims under 42 U.S.C. § 1983 and all of plaintiff's claims against defendants the Secretary of the Army, the Department of the Army and the Army Personnel Agency.  The Court DENIES defendants' motion to dismiss based on inadequate service of process and DIRECTS plaintiff to personally serve defendants John W. Matthews and Karl Bielenberg within thirty days of the date of this order.  The Court DENIES plaintiff's request for certification pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED, this 27 day of April, 1989.

ENTERED ON DOCKET

MAY 1 1989

L.D.T., CLERK

DEPUTY CLERK

Marvin H. Shoob, Judge
United States District Court
Northern District of Georgia

10

AO 72A
(Rev. 8/82)

75

FILED IN CLERK'S OFFICE
U.S.D.C.-Atlanta

JAN 10 1991

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND A JONES,                    :

     Plaintiff,                   :          CIVIL ACTION

v.                                 :          1:88-cv-727-MHS

SECRETARY OF THE ARMY              :
et al.,
                                   :
     Defendants

## ORDER

Presently before the Court are defendants' motion for summary judgment, defendants' motion for sanctions and default judgment and request for hearing, defendants' motion to extend time for filing of the pretrial order, and plaintiff's motion to compel and to admit as true defendants' failure to admit or deny.  For the reasons stated below, the Court will deny plaintiff's motion to compel, deny defendants' motion for sanctions, grant defendants' motion to extend time for filing of the pretrial order, and defer ruling on defendants' motion for summary judgment.

## BACKGROUND

Plaintiff Roland A. Jones ("Jones") claims he was denied assignments necessary for promotion because of his race and, as a result, was forced to retire from the United States Army on September 30, 1980, after twenty-one years of service.  The Court previously dismissed the majority of

AO 72A
(Rev. 8/82)

plaintiff's claims in Orders dated October 17, 1988, and April 28, 1989. On October 17, 1988, the Court adopted the Report and Recommendation of the Magistrate dismissing plaintiff's claims under Title VII of the Civil Rights Act of 1964. Because the Magistrate was already familiar with plaintiff's complaint, the Court directed the Magistrate to address the remainder of defendants' motion to dismiss. On April 28, 1989, after reviewing the Magistrate's Report and Recommendation, the Court granted defendants' motion to dismiss as to all of plaintiff's claims under 42 U.S.C. § 1983 and all of plaintiff's claims against defendants the Secretary of the Army, the Department of the Army, and the Army Personnel Agency (collectively "the Army"). The Court denied the motion as to the claims involving errors in plaintiff's military records against defendants John W. Matthews ("Matthews"), Karl Bielenberg ("Bielenberg"), and the Army Board for the Correction of Military Records ("ABCMR"). The Court also denied the motion as to plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 against these same defendants.

Plaintiff's complaints about his military records do not differ substantially from his complaints about institutional discrimination. He argues that he was denied promotion because his Officer Efficiency Ratings ("OERs")

2

reflect the effects of the discrimination he suffered.  To
the extent that the OERs contain negative comments, he
claims that his evaluators were biased against him because
of his race.  To the extent that the OERs did not provide
ratings high enough to entitle him to promotion, he insists
that he was entitled to more favorable ratings to offset the
adverse impact of institutional discrimination.  Plaintiff
also argues that his applications for more favorable
evaluations were not considered by ABCMR at the time they
were filed and that ABCMR, through defendants Matthews and
Bielenberg, attempted to conceal its failure to act in an
effort to discriminate against him.  Once ABCMR reviewed his
requests, plaintiff maintains that their decisions were
tainted by racial bias and prejudice.

## DISCUSSION

### (1) Defendants' motion for sanctions and default judgment and request for hearing.

Defendants document an extensive history of
recalcitrance by plaintiff during the discovery process.
The most recent example is the basis for defendants' motion
for sanctions and default judgment and request for hearing.
By order dated August 14, 1990, the Court granted
defendants' motion to compel plaintiff's attendance at
deposition.  Although plaintiff attended the August 28,

3

1990, deposition, he refused to answer any questions regarding his applications for correction of his military records, allegedly filed in 1975, and correspondence between plaintiff and defendants Bielenberg and Matthews regarding these applications.  Plaintiff argues that defendants already possess the information about which he was questioned, that, in any case, the information is not relevant to plaintiff's remaining claims, and, finally, that plaintiff's refusal to answer was merely a response to defendants' noncompliance with his discovery requests.  The Court finds, however, that there is no basis for plaintiff's refusal.  The information sought by defendants is directly related to plaintiff's remaining claims against defendants. Furthermore, defendants have indicated time and again - to plaintiff and to the Court - that they do not have copies of the 1975 applications or related correspondence and that only plaintiff is in a position to testify as to the contents of these documents.

Although the Court is weary of plaintiff's continued noncooperation with defendants and noncompliance with orders of the Court, the Court does not believe that default judgment is the appropriate response at this juncture or that a hearing is necessary.  The Court will give plaintiff one last chance to respond to defendants' questions

4

Jones v. Geren, et al.,
Civil Action No. 07-2041                    Page 16 of 59

regarding his 1975 applications and related correspondence noted above. Plaintiff is on notice, however, that his continued abuse of the discovery process will not be tolerated and may result in the imposition of severe sanctions, including the entry of default judgment.

### (2) Plaintiff's motion to compel and to admit as true defendants' failures to admit or deny.

Plaintiff argues that defendants have failed to respond to his requests for admissions of fact and request for production of documents. However, plaintiff has completely failed to comply with Local Rule 225-4(b) which sets out the required contents and form of a motion to compel. Accordingly, the Court will deny plaintiff's motion. Although the Court feels that plaintiff should be given another opportunity to file a properly supported motion to compel, the Court's review of plaintiff's present motion indicates that much of the motion is based on the erroneous belief that the Court has not dismissed all of plaintiff's claims of institutional discrimination. The Court recognizes that plaintiff's complaints about his military records do not differ substantially from his complaints about institutional discrimination. However, the Court must remind plaintiff that the only claims remaining involve errors in plaintiff's military records. All other claims

5

have been dismissed by the Court.  <u>See</u> Orders dated October
17, 1988, and April 28, 1989.

<u>(3) Defendants' motion for summary judgment.</u>

Plaintiffs' remaining claims regarding errors in his
military record are the subject of defendants' motion for
summary judgment.  However, as noted above, it appears to
the Court that the information sought by defendants
regarding plaintiff's 1975 applications and certain related
correspondence might be relevant to the Court's disposition
of defendants' motion.  While the Court recognizes that
plaintiff's testimony might add nothing of substance to the
record as it now stands, the Court is reluctant to rule on
defendants' motion for summary judgment until the record is
complete.[1]

Accordingly, the Court DENIES defendants' motion for
sanctions and default judgment and request for hearing,
DENIES plaintiff's motion to compel and to admit as true
defendants' failures to admit or deny, GRANTS defendants'
motion to extend the time for filing of the pretrial order
until thirty (30) days after the Court has ruled on

---

[1]     The Court must also defer ruling on defendants' motion
until it has received and ruled on plaintiff's "reworked"
motion to compel.

6

Jones v. Geren, et al.,
Civil Action No. 07-2041                    Page 18 of 59

defendants' motion for summary judgment, and DEFERS ruling
on defendants' motion for summary judgment.  In addition,
the Court DIRECTS plaintiff to refile his motion to compel
within fifteen (15) days of the date of this order.
Defendants will have fifteen (15) days thereafter in which
to file a supplement to their response.  The Court also
DIRECTS plaintiff to submit to oral deposition and to
respond completely to defendants' questions within thirty
(30) days of the date of this order.  Finally, the Court
DIRECTS the parties to file all materials in support of and
in opposition to defendants' motion for summary judgment
within sixty (60) days of the date of this order and DIRECTS
the Clerk to resubmit defendants' motion at such time.

       IT IS SO ORDERED, this ___ day of January, 1991.


                              Marvin H. Shoob, Judge
                              United States District Court
                              Northern District of Georgia


ENTERED ON DOCKET

    JAN 11 1991
        L.D.T., CLERK
    BY          DEPUTY CLERK

                                       7

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 08 1991

LUTHER D. THOMAS, Clerk
By: [signature]                    Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND A. JONES,                    :

        Plaintiff,                  :        CIVIL ACTION

v.                                  :        1:88-cv-727-MHS

SECRETARY OF THE ARMY,              :
et al.,
                                    :
        Defendants

                            ORDER

    Plaintiff Roland A. Jones ("Jones") is a black male who
was a member of the United States Army from June 1, 1959,
until September 30, 1980.  He was forced to retire after
obtaining the rank of lieutenant colonel because he was not
qualified for further promotion.  Plaintiff claims that his
forced retirement resulted from a systematic policy of
denying black officers the assignments necessary to qualify
for promotion.  Discrimination claims based on that alleged
policy encompassed the majority of plaintiff's original
complaint; however, those claims were dismissed in Orders
dated October 17, 1988, and April 28, 1989.[1]  Those
decisions did not preclude Jones, however, from pursuing

---

[1]  Plaintiff's Title VII claims were dismissed in the
Order dated October 17, 1988, because Title VII does not
apply to the military.  See Stinson v. Hornsby, 821 F.2d
1537 (11th Cir. 1987), cert. denied, 109 S.Ct. 402 (1988).
Plaintiff's institutional discrimination claims were
dismissed in the Order dated April 28, 1989, because
judicial review of his assignments within the military would
constitute unacceptable interference with the military
function.  See United States v. Stanley, 483 U.S. 669
(1987); Chappell v. Wallace, 462 U.S. 296 (1983); Gilligan
v. Morgan, 413 U.S. 1 (1973); Orloff v. Willoughby, 345 U.S.
83 (1953).

claims against the Army Board for the Correction of Military

Records ("ABCMR") for correction of alleged errors in his

military record.  The Court also did not preclude claims

that the ABCMR, John W. Matthews ("Matthews"), and Karl

Bielenberg ("Bielenberg") refused to correct the alleged

errors in violation of 42 U.S.C. §§ 1981 and 1985.  These

remaining claims are the subject of defendants' motion for

summary judgment now before the Court.  For the reasons

stated below, the Court will grant defendants' motion on

plaintiff's §§ 1981 and 1985 claims and, albeit reluctantly,

defer ruling on defendants' motion on plaintiff's other

claims.

**DISCUSSION**

    A.   **Plaintiff's 42 U.S.C. §§ 1981 and 1985 claims**
**against the ABCMR, Matthews, and Bielenberg.**

    Plaintiff contends that the ABCMR, acting through its

past and present executive secretaries, respectively,

Matthews and Bielenberg, refused to correct alleged errors

in his military record in violation of 42 U.S.C. §§ 1981 and

1985.  The decisions at issue were issued by the ABCMR on

August 4, 1983, May 7, 1984, and April 8, 1985, in response

to, respectively, plaintiff's initial application for

correction of his military record and two subsequent

requests for reconsideration of the ABCMR's initial

2

decision.[2]  The ABCMR rejected the bulk of plaintiff's claims,[3] finding that plaintiff did not submit sufficient evidence of discrimination during his military career or in the preparation of his Officer Efficiency Ratings ("OERs") and that his OERs accurately reflect his qualifications at the time that they were written.[4]

Plaintiff's primary contention is that the ABCMR's racial animus can be inferred from its refusal to correct OERs which, according to plaintiff, were plainly the product of the discriminatory bias of plaintiff's evaluators.  The OERs at issue cover the periods from September 14, 1960, to

---

[2]    Plaintiff provided the ABCMR with little if any new evidence in support of his requests for reconsideration.  As a result, the ABCMR's decisions denying these requests refer to and recite much of the language in its initial decision. Accordingly, the Court will focus its analysis on the ABCMR's initial decision.

[3]    The ABCMR "accepted" some of plaintiff's claims, however.  The ABCMR agreed with the SRB that a certain ambiguous phrase in plaintiff's OER for the period August 1, 1972, to July 2, 1973, should be removed and, in light of the erroneous filing of certain documents, that plaintiff should be reconsidered for promotion to LTC, RA, by a Special Selection Board ("SSB") using 1979 and 1980 selection criteria.  Subsequently, plaintiff was twice considered for promotion by two SSBs and was rejected each time.

[4]    The OERs considered by the ABCMR cover the periods from September 14, 1960, to November 30, 1960; December 1, 1960, to April 2, 1961; December 1, 1961, to February 17, 1962; November 1, 1963, to January 31, 1964; February 1, 1964, to April 1, 1964; and August 1, 1972, to July 2, 1973.

3

November 30, 1960; December 1, 1960, to April 2, 1961; and
December 1, 1961, to February 17, 1962.  In each OER, the
"indorser" refers to plaintiff as a "credit to his race."
The ABCMR, as well as the Special Review Board ("SRB") and
the Equal Opportunity Programs ("EOP") each of which
reviewed plaintiff's application and issued advisory
opinions, concluded that the remarks were neither offensive
nor damaging.

It is clear that such remarks - taken alone and out of
context - are offensive.  It is equally clear, however, that
the ABCMR's characterization of these remarks and dismissal
of plaintiff's claims were appropriate and supported by
substantial evidence.  During the course of its evaluation
of plaintiff's application, the SRB contacted the indorser
about his remarks.  According to the SRB, the indorser
stated that "a compliment was intended" and expressed "a
high opinion of the applicant and . . . surprise that he
infers anything but a favorable evaluation from any of the
three OERs."  The Court's review of the three OERs bears out
the indorser's stated intent - the remarks appear in the
midst of highly favorable evaluations.  Thus, in this
context, such statements, while offensive, are, as the SRB
noted, "innocuous and superfluous" and, if anything, reflect
poorly upon their author.  See Price v. Lockheed Space

4

Operations Co., 856 F.2d 1503, 1507 (11th Cir. 1988); see
also Croy v. Skinner, 410 F.Supp. 117, 127 (N.D.Ga. 1976),
cited in Brown v. Masonry Products, Inc., 874 F.2d 1476,
1478 (11th Cir. 1989), cert. denied, 110 S.Ct. 1153 (1990).

    Plaintiff also contends that the ABCMR's racial animus
can be inferred from a letter sent to plaintiff by Matthews
and from official reports that document pervasive
discrimination against blacks in the military.  The letter
plaintiff refers to, which he characterizes as an effort by
Matthews to force him out of the administrative process, was
written in response to a settlement proposal by plaintiff
and simply rejects the proposal and informs plaintiff of his
right to pursue his claims in "a Federal Court of competent
jurisdiction."  The Court finds that Matthews's response was
completely proper - 32 C.F.R. § 581.3(g)(ii) provides that
"[s]ettlement and payment of claims will be made only upon a
claim of the person whose record has been corrected" - and
in no way gives rise to an inference of racial animus.  The
same must also be said for the official reports referred to
by plaintiff.  While they do document discrimination in the
military, they do not conclude that each and every OER was
tainted by racial bias and they do not, as plaintiff
believes, mandate corrective action by the ABCMR in each and
every case.

5

AO 72A
Rev. 8/82)

After carefully reviewing the extensive materials that were reviewed by ABCMR and the additional materials that have since been provided to the Court by plaintiff, the Court concludes that there is no evidence that the actions of the ABCMR were not supported by "substantial evidence," see Chappell v. Wallace, 462 U.S. 296 (1983), or were motivated by the racial, class-based "invidiously discriminatory animus" necessary to give rise to a civil rights claim.[5] See Griffin v. Breckenridge, 403 U.S. 88 (1971). Accordingly, the Court will grant defendants' motion for summary judgment on plaintiff's §§ 1981 and 1985 claims.

B. **Plaintiff's claim that the ABCMR failed to comply with its own regulations.**

Plaintiff argues that the ABCMR's failure to act upon plaintiff's 1974, 1975, and 1976 applications for correction of his military record was motivated by racial animus in violation of §§ 1981 and 1985.[6] Although plaintiff fails to

---

[5]    Plaintiff himself seems to have recognized the weakness of his civil rights claims when, during his deposition, he admitted that he did not have any "hard facts" to back up his claims of discrimination by the ABCMR, Matthews, and Bielenberg.

[6]    The documentation provided by plaintiff suggests that only plaintiff's 1975 "applications" were properly submitted to and were, in fact, received by the ABCMR. Title 32 C.F.R. § 581.3(c)(1)(i) provides that an "application for

6

AO 72A
Rev. 8/82)

provide the Court with any evidence to substantiate this claim, the Court must still address plaintiff's very serious allegation that the ABCMR failed to follow its own regulations, whatever its motivation, in failing to act upon plaintiff's 1975 applications. <u>See Cruz-Casado v. United States</u>, 553 F.2d 672 (Ct.Cl. 1977). Unfortunately, because the record, though voluminous, fails to provide the Court with certain essential information, the Court cannot now dispose of this claim. It appears to the Court, however, that the facts necessary to the Court's resolution of this claim are not in dispute and that the Court will be able to grant summary judgment on this issue - in favor of either plaintiff or defendants - once it has received the information outlined below.

**CONCLUSION**

For the reasons stated above, the Court GRANTS defendants' motion for summary judgment on plaintiff's 42 U.S.C. §§ 1981 and 1985 claims and DEFERS ruling on defendants' motion for summary judgment on plaintiff's

---

correction should be submitted on DD Form 149 (Application for Correction of Military or Naval Record)." Plaintiff's 1974 "application" is an extract from a complaint while plaintiff's 1976 applications are, respectively, an Inspector General Action Request and a letter to the ABCMR regarding the status of plaintiff's applications. None of these "applications" is an application within the meaning of 32 C.F.R. § 581.3(c)(1)(i).

7

AO 72A
Rev. 8/82)

remaining claims.  In addition, the Court DIRECTS the

parties to provide the Court with the following information

- **on no more than ten (10) pages** - within fifteen (15) days

of the date of this order:

> (1) a <u>brief</u> description of the administrative remedies
> that an applicant, who is seeking to correct his
> military record, must exhaust before he may apply to
> the ABCMR (this should include the names of the
> respective agencies and a description of the kind of
> applications that they consider);

> (2) a <u>brief</u> description, in chronological order
> beginning in 1970, of plaintiff's requests for
> correction of his military record - the corrections
> sought, the OERs at issue, etc. - and the actions taken
> by the reviewing agency (the parties should <u>clearly</u>
> cite to the record); and

> (3) a <u>brief</u> description, in chronological order
> beginning in 1970, of plaintiff's promotional path and
> of any requests by plaintiff for reconsideration of a
> promotional decision and the actions taken by the
> reviewing agency (the parties should <u>clearly</u> cite to
> the record).

The Court emphasizes that it is not interested in further

argumentation or in new exhibits, but rather in <u>information</u>

that, though scattered throughout the record, has never been

brought together in one place.

IT IS SO ORDERED, this _6_ day of July, 1991.

_____
Marvin H. Shoob, Judge
United States District Court
Northern District of Georgia

**ENTERED ON DOCKET**

**JUL  8 1991**

L.D.T., CLERK
BY
DEPUTY CLERK

8

Jones v. Geren, et al.,
Civil Action No. 07-2041                          Page 27 of 59

AO 72A
(Rev. 8/82)

93

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 3 0 1991

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

ROLAND A. JONES,                    :

    Plaintiff,                  :        CIVIL ACTION

v.                                  :        1:88-cv-727-MHS

SECRETARY OF THE ARMY,              :
et al.,
                                    :
    Defendants

## ORDER

Plaintiff Roland A. Jones ("Jones") is a black male who was a member of the United States Army from June 1, 1959, until September 30, 1980.  He was forced to retire after obtaining the rank of lieutenant colonel because he was not qualified for further promotion.  Plaintiff claims that his forced retirement resulted from a systematic policy of denying black officers the assignments necessary to qualify for promotion.  Discrimination claims based on that alleged policy encompassed the majority of plaintiff's original complaint; however, those claims were dismissed in Orders dated October 17, 1988, and April 28, 1989.[1]  Those

---

[1]     Plaintiff's Title VII claims were dismissed in the October 17, 1988, Order because Title VII does not apply to the military.  See Stinson v. Hornsby, 821 F.2d 1537 (11th Cir. 1987), cert. denied, 109 S.Ct. 402 (1988).  Plaintiff's institutional discrimination claims were dismissed in the April 28, 1989, Order because judicial review of his assignments within the military would constitute unacceptable interference with the military function.  See United States v. Stanley, 483 U.S. 669 (1987); Chappell v. Wallace, 462 U.S. 296 (1983); Gilligan v. Morgan, 413 U.S. 1 (1973); Orloff v. Willoughby, 345 U.S. 83 (1953).

AO 72A
(Rev. 8/82)

decisions did not preclude Jones from pursuing claims against the Army Board for the Correction of Military Records ("ABCMR") for failing to act upon his applications for correction of alleged errors in his military record and against the ABCMR, John W. Matthews ("Matthews"), and Karl Bielenberg ("Bielenberg") for refusing to correct alleged errors in his military record in violation of 42 U.S.C. §§ 1981 and 1985. These remaining claims were addressed by the Court in its July 5, 1991, Order, in the context of defendants' motion for summary judgment. The Court granted defendants' motion for summary judgment on plaintiff's §§ 1981 and 1983 claims and deferred ruling on defendants' motion for summary judgment on plaintiff's remaining claims pending receipt of additional information from the parties. The remaining portion of defendants' motion for summary judgment is now before the Court and, for the reasons stated below, the Court will grant the motion.

### DISCUSSION

In its July 5, 1991, Order, the Court concluded that plaintiff had failed to provide the Court with any evidence to substantiate his claim that the ABCMR's failure to act upon his 1974, 1975, and 1976 applications for correction of his military record was motivated by racial animus in violation of §§ 1981 and 1985. Id. at 6. The Court noted,

2

however, that it still needed to address plaintiff's very serious allegation that the ABCMR had failed to follow its own regulations, whatever the motivation of its members, in failing to act upon these applications.[2] Id. at 6-7. The Court further noted that, although plaintiff alleged that he had submitted a total of seven "applications" to ABCMR during 1974, 1975, and 1976,

> the documentation provided by plaintiff suggests that only plaintiff's 1975 "applications" were properly submitted to and were, in fact, received by the ABCMR. Title 32 C.F.R. § 581.3(c)(1)(i) provides that an "application for correction should be submitted on DD Form 149 (Application for Correction of Military or Naval Record)." Plaintiff's 1974 "application" is an extract from a complaint while plaintiff's 1976 applications are, respectively, an Inspector General Action Request and a letter to the ABCMR regarding the status of plaintiff's applications. None of these "applications" is an application within the meaning of 32 C.F.R. § 581.3(c)(1)(i).

Order dated July 5, 1991, at 6. Having reviewed the record once again, the Court sees no reason to alter this initial conclusion - with one exception, however. According to a April 19, 1976, letter from the Inspector General's Office, plaintiff's March 18, 1976, Inspector General Action Request was forwarded to the ABCMR "for consideration." See Exhibit T to Plaintiff's Complaint. The Court must assume,

---

[2]    As noted earlier, the Court was not able to dispose of this claim "because the record, though voluminous, fail[ed] to provide the Court with certain essential information," Order dated July 5 1991, at 7, information which the Court then directed the parties to provide, id. at 8, and which has since been provided to the Court.

3

therefore, in the context of defendants' motion for summary judgment, that the Request was sent to and received by the ABCMR.

The Court notes at the outset that it appears that the undisputed facts indicate that the ABCMR acted upon the aforementioned 1975 and 1976 "applications" in a manner consistent with its regulations.  See Administrative Record ("AR") at 699-719; Defendants' Brief in Response to Order dated July 5, 1991, at 7-9.  It is clear, in any event, that even if the ABCMR did not act upon these applications, the ABCMR's failure to act - the violation of its regulations - was not "prejudicial" to plaintiff.  See Cruz-Casado v. United States, 553 F.2d 672, 675 (Ct.Cl. 1977).

On June 29, 1983, April 25, 1984, and March 27, 1985, the ABCMR issued three decisions in response to, respectively, plaintiff's initial application for correction of his military record and two subsequent requests for reconsideration of the ABCMR's initial decision.  Exhibit A to Defendants' Motion to Dismiss filed on June 6, 1988.  In its June 29, 1983, decision, the ABCMR concluded that there was insufficient evidence

> to support the applicant's allegation that he was not
> afforded an equal opportunity in pursuit of his career,
> or that he was malassigned and consequently not
> promoted because he was black . . . [or] that the

4

questioned OERs contained racially motivated statements
or that they were not representative of his capacity,
efficiency and value at the time they were written.

Id. The ABCMR also concluded, however, that a certain

ambiguous phrase in plaintiff's OER for the period August 1,

1972, to July 2, 1973, should be removed and, in light of

the erroneous filing of certain documents, that plaintiff

should be reconsidered for promotion to LTC, RA, by a

Special Selection Board ("SSB") using 1979 and 1980

selection criteria.  Id. Plaintiff was then twice

considered for promotion by two SSBs and each time the

Secretary of the Army approved the SSB's decision not to

recommend plaintiff for promotion.  AR at 87.


The Court's review of the ABCMR's June 29, 1983, April

25, 1984, and March 27, 1985, decisions indicates that, on

each occasion, the ABCMR was presented with and addressed

the same issues and concerns presented by plaintiff in the

1975 and 1976 applications allegedly not acted upon by the

ABCMR.[3]  It goes without saying, therefore, that the ABCMR's

alleged failure to act upon plaintiff's these applications

could not have resulted in prejudice to plaintiff.

---

[3]    The Court concluded in its July 5, 1991, Order, that
"there is no evidence that [these decisions] were not
supported by 'substantial evidence' or were motivated by the
racial, class-based 'invidiously discriminatory animus'
necessary to give rise to a civil rights claim."  Id. at 6
(citations omitted).

5

**CONCLUSION**

Accordingly, for the reasons stated above, the Court GRANTS defendants' motion for summary judgment on plaintiff's remaining claims in this matter.

IT IS SO ORDERED, this 27th day of September, 1991.

Marvin H. Shoob, Judge
United States District Court
Northern District of Georgia

**ENTERED ON DOCKET**

OCT 1 1991

BY

L.D.T., CLERK

DEPUTY CLERK

6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND A. JONES,                    :

    Plaintiff,                   :     CIVIL ACTION

v.                                  :     1:88-cv-727-MHS

SECRETARY OF THE ARMY,              :

    Defendant                    :

### ORDER

Since this case is presently on appeal to the Eleventh Circuit Court of Appeals, this Court has no jurisdiction over this action.  The Court therefore strikes plaintiff's motion for sanctions [#96-1].  Plaintiff may refile his motion when the Eleventh Circuit has ruled on his appeal.

IT IS SO ORDERED, this _____ day of February, 1993.

Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

ENTERED ON DOCKET

FEB 3 1993

Jones v. Geren, et al.,
Civil Action No. 07-2041                    Page 34 of 59

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 10 1993

LUTHER D. ---AG, Clerk
By:                    Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND A. JONES,                    :

    Plaintiff,                    :        CIVIL ACTION

v.                                  :        1:88-cv-727-MHS

SECRETARY OF THE ARMY et al., :

    Defendants                    :

## ORDER

This action is again before the Court on plaintiff's request for clarification of the Court's February 1, 1993 Order in which the Court declared that it lacked jurisdiction over this action and struck plaintiff's motion for sanctions, for a new trial, and for relief from judgment.

On October 29, 1992, the Eleventh Circuit Court of Appeals affirmed this Court's grant of summary judgment to defendants in this action. On December 31, 1992, the Eleventh Circuit denied plaintiff's motion for a hearing en banc. On January 7, 1993, plaintiff moved the Eleventh Circuit to stay its mandate pending plaintiff's application to the United States Supreme Court for a writ of certiorari.

On the next day, plaintiff filed a motion in this Court asking the Court, in essence, to reconsider its grant of

summary judgment in favor of defendants.  Specifically, plaintiff moved for a new trial under Federal Rule of Civil Procedure 59, for relief from judgment under Rule 60, and for sanctions against defendants' attorneys.

The Court concludes that once plaintiff filed a motion to appeal this action to the Eleventh Circuit, the Court was divested of any jurisdiction over this action.  Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 379 (1985).  Accordingly, this Court is without jurisdiction to hear plaintiff's motion.

The Court's Order striking plaintiff's motions [#97] should stand, and the Court DIRECTS plaintiff to file no further pleadings in this Court since the Court lacks jurisdiction over this action.  While the Court understands that plaintiff is pro se, the Court reminds plaintiff that he can be sanctioned for filing frivolous pleadings.

IT IS SO ORDERED, this ___ day of February, 1993.

Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

2



UNITED STATES DISTRICT COURT    FEB 17 1993
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND A. JONES,               :

     Plaintiff,                :      CIVIL ACTION

v.                             :      1:88-cv-727-MHS

SECRETARY OF THE ARMY et al., :

     Defendants                :

### ORDER

In light of the Court's Order of February 10, 1993, the Court DIRECTS the Clerk to strike plaintiff's motion for relief from judgment and for a new trial [#104].  The Court GRANTS defendants' motion for relief [#105] from responding to further motions filed by plaintiff as long as the Court lacks jurisdiction over this action.

IT IS SO ORDERED, this 17 day of February, 1993.


Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia


ENTERED ON

FEB 1

BY         L.D. CLERK
           DEPUTY CLERK


AO 72A
(Rev. 8/82)

*108*

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

No. 91-8893
Non-Argument Calendar

District Court Docket No. 1:88-cv-727

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

UCT 2 9 1992

MIGUEL J. CORTEZ
CLERK
```

ROLAND A. JONES,

                                    Plaintiff-Appellant,

        versus

SECRETARY OF THE ARMY, DEPARTMENT OF
THE ARMY, ARMY BOARD FOR THE CORRECTION
OF MILITARY RECORDS, TOTAL ARMY PERSONNEL
AGENCY, JOHN W. MATTHEWS and KARL BIELENBERG,
individually and in their capacity as Executive
Secretary for the Army Board for Correction of
Military Records,

                                    Defendants-Appellees.

                -------------------------

            Appeal from the United States District Court
                for the Northern District of Georgia
                -------------------------

Before TJOFLAT, Chief Judge, HATCHETT and DUBINA, Circuit Judges.

### J U D G M E N T

    This cause came to be heard on the transcript of the record
from the United States District Court for the Northern District of
Georgia, and was taken under submission by the Court upon the
record and briefs on file, pursuant to Eleventh Circuit Rule 34-3;

    ON CONSIDERATION WHEREOF, it is now hereby ordered and
adjudged by this Court that the judgment of the said District Court
in this cause be and the same is hereby AFFIRMED;

    IT IS FURTHER ORDERED THAT plaintiff-appellant pay to
defendants-appellees, the costs on appeal to be taxed by the Clerk
of this Court.

                        Entered: October 29, 1992
                    For the Court: Miguel J. Cortez, Clerk

                        By:  *Karleer McNabb*
                                 Deputy Clerk

ISSUED AS MANDATE: **MAR 0 3 1993**

                    Jones v. Geren, et al.,
                    Civil Action No. 07-2041                    Page 38 of 59

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 91-8893
Non-Argument Calendar

———————————

D. C. Docket No. 1:88-cv-727-MHS

```
                    ┌─────────────────────────┐
                    │        FILED            │
                    │  U.S. COURT OF APPEALS  │
                    │    ELEVENTH CIRCUIT     │
                    │  ┌───────────────────┐  │
                    │  │    OCT 2 9 1992   │  │
                    │  └───────────────────┘  │
                    │                         │
                    │   MIGUEL J. CORTEZ      │
                    │        CLERK            │
                    └─────────────────────────┘
```

ROLAND A. JONES,

Plaintiff-Appellant,

versus

SECRETARY OF THE ARMY, DEPARTMENT OF
THE ARMY, ARMY BOARD FOR THE CORRECTION
OF MILITARY RECORDS, TOTAL ARMY PERSONNEL
AGENCY, JOHN W. MATTHEWS and KARL
BIELENBERG, individually and in their
capacity as Executive Secretary for
the Army Board for Correction of
Military Records,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Northern District of Georgia

———————————

(October 29, 1992)

Before TJOFLAT, Chief Judge, HATCHETT and DUBINA, Circuit Judges.

PER CURIAM:

    We affirm the district court's rejection of the claims for

relief appellant, a retired army officer, presents pro se in this

appeal.  The district court properly dismissed appellant's Title
VII claims of employment discrimination, see 42 U.S.C. §§ 2000e -
2000e-17, because Title VII is inapplicable to members of the
Armed Forces.  Stinson v. Hornsby, 821 F.2d 1537, 1539 (11th Cir.
1987), cert. denied, 488 U.S. 959, 109 S.Ct. 402 (1988).  The
court also properly rejected appellant's claims under 42 U.S.C.
§§ 1981 and 1985 for the reasons set forth in the appellees'
brief, at pp. 17-22.

Finally, the district court properly rejected appellant's
claim that the Army Board for the Correction of Military Records
(ABCMR), and its agency heads, failed to fulfill their duty of
reviewing his complaints regarding the correction of his military
records.  Specifically, he contends that ABCMR did nothing to
correct the consequences of racial discrimination in his Officer
Efficiency Ratings (OERs).  We disagree.  ABCMR's actions on
appellant's application for correction of records were, as the
district court concluded, appropriate and supported by
substantial evidence.

Although appellant referred extensively to studies of
generalized discrimination in the Army, he failed to show that
the ABCMR intentionally discriminated against him on account of
his race.  See Price v. Lockheed Space Operations Co., 856 F.2d
1503, 1507 (11th Cir. 1988) (42 U.S.C. § 1981); Baker v.
McDonald's Corp., 686 F. Supp. 1474; 1481 (S.D. Fla. 1987),
aff'd mem., 865 F.2d 1272 (11th Cir. 1988), cert. denied,
Hutchinson v. McDonald's Corp., 493 U.S. 812, 110 S.Ct. 57 (1989)

2

(42 U.S.C. § 1985(3)); McIntosh v. Arkansas Republican Party –
Frank White Election Comm., 766 F.2d 337, 340 (8th Cir. 1985)
(same).  Appellant also contends that the ABCMR failed to act on
the applications he made, in 1975 and 1976, to correct his
records.  As the district court observed, appellant reiterated
the complaints made in these applications in the applications for
correction of records he made in 1983-1985, and these complaints
were properly addressed at that time.  Accordingly, appellant
could have sustained no prejudice from ABCMR's failure to act on
his 1975 and 1976 applications and the denial of judicial relief
was appropriate.

    We find no error in the district court's handling of
appellant's claims.


    AFFIRMED.

3

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 91-8893

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

DEC 3 1 1992

MIGUEL J. CORTEZ
CLERK

ROLAND A. JONES,

Plaintiff-Appellant,

versus

SECRETARY OF THE ARMY, DEPARTMENT OF
THE ARMY, ARMY BOARD FOR CORRECTION
OF MILITARY RECORDS, TOTAL ARMY PERSONNEL
AGENY, JOHN W. MATTHEWS, and KARL
BIELENBERG, individually and in their
capacity as Executive Secretary for
the Army Board for Correction of
Military Records,

Defendants-Appellees.

------------------------------

On Appeal from the United States District Court for the
Northern District of Georgia
------------------------------

ON PETITION(S) FOR REHEARING AND SUGGESTION(S) OF REHEARING EN BANC

Before: TJOFLAT, Chief Judge, HATCHETT and DUBINA, Circuit Judges.

PER CURIAM:

( ✓ )   The Petition(s) for Rehearing are DENIED and no member of
this panel nor other Judge in regular active service on the Court
having requested that the Court be polled on rehearing en banc
(Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit
Rule 35-5), the Suggestion(s) of Rehearing En Banc are DENIED.

( )   The Petition(s) for Rehearing are DENIED and the Court having
been polled at the request of one of the members of the Court and
a majority of the Circuit Judges who are in regular active service
not having voted in favor of it (Rule 35, Federal Rules of
Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion(s)
of Rehearing En Banc are also DENIED.

( )   A member of the Court in active service having requested a
poll on the reconsideration of this cause en banc, and a majority
of the judges in active service not having voted in favor of it,
Rehearing En Banc is DENIED.

ENTERED FOR THE COURT:

UNITED STATES CIRCUIT JUDGE

ORD-42
(9/91)

*109*



FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

MAR  3 1993

MIGUEL J. CORTEZ
CLERK

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 91-8893

ROLAND A. JONES,

                                        Plaintiff-Appellant,

                    versus

SECRETARY OF THE ARMY, DEPARTMENT
OF THE ARMY, ARMY BOARD FOR CORRECTION
OF MILITARY RECORDS, TOTAL ARMY PERSONNEL
AGENCY, JOHN W. MATTHEWS and KARL BIELENBERG,
individually and in their capacity as Executive
Secretary for the Army Board for Correction
of Military Records

                                        Defendants-Appellees.

On Appeal from the United States District Court for the
Northern District of Georgia

O R D E R :

( XXX)  The motion of Appellant, for ( XX ) stay (    ) recall and
stay issuance of the mandate pending petition for writ of
certiorari is DENIED.

(    )  The motion of Appellant, for ( XX ) stay (    ) recall and
stay of the mandate pending petition for writ of certiorari is
GRANTED to and including _____ the stay to continue in
force until the final disposition of the case by the Supreme Court,
provided that within the period mentioned above there shall be
filed with the Clerk of this Court the certificate of the Clerk of
the Supreme Court that the certiorari petition has been filed.  The
Clerk shall issue the mandate upon the filing of a copy of an order
of the Supreme Court denying the writ, or upon expiration of the
stay granted herein, unless the above mentioned  certificate shall
be filed with the Clerk of this Court within that time.

(   )  The motion of_____ for a further stay
of the issuance of the mandate is GRANTED to and including _____
_____ under the same conditions as set forth in the
preceding paragraph.

(   )  IT IS ORDERED that the motion of _____,
for a further stay of the issuance of the mandate is DENIED.

                    /s/ GERALD BARD TJOFLAT_____
                    CHIEF UNITED STATES CIRCUIT JUDGE

2

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 91-8893



FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

MAY 1 3 1993

MIGUEL J. CORTEZ
CLERK

ROLAND A. JONES,

Plaintiff-Appellant,

versus

SECRETARY OF THE ARMY,
DEPARTMENT OF THE ARMY,
ARMY BOARD FOR CORRECTION OF MILITARY RECORDS,
TOTAL ARMY PERSONNEL AGENCY,
JOHN W. MATTHEWS and
KARL BIELENBERG,
 individually and in their capacity as Executive Secretary for
 the Army Board for Correction of Military Records,

Defendants-Appellees.

-------------------------------

On Appeal from the United States District Court for the
Northern District of Georgia

-------------------------------

O R D E R:

The mandate issued in this case on March 3, 1993.

Appellant's motion "pursuant to Federal Rules Civil Procedure
60(b) (1-3, and 6) and 59(d), for relief from judgment and new
trial for plaintiff's 1981 and 1985 discrimination claims, and
demand for sanctions against counsel for the defendants' counsel
for falsifying the 1980 ABCMR record and lying to the district
court" is DENIED without prejudice to renewal in the district court
consistent with the district court's February 2, 1993 order.

/s/ GERALD B. TJOFLAT
CHIEF JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

10 Feb 1994

ROLAND A. JONES,                    :

    Plaintiff,                    :     CIVIL ACTION

                    :     1:88-cv-727-MHS

v.

SECRETARY OF THE ARMY et al., :

    Defendants                    :

## ORDER

This action is before the Court on numerous motions filed by plaintiff.  For the reasons stated below, the Court denies the motions.

In September 1991, the Court granted defendants summary judgment on plaintiff's remaining claims.  In October 1991, plaintiff appealed the Court's Order.  In October 1992, the Eleventh Circuit Court of Appeals affirmed this Court's grant of summary judgment to defendants and ordered plaintiff to pay to defendants the costs of the appeal.  Plaintiff has moved for sanctions against counsel for defendants, for relief from judgment, for a recall of summary judgment, and for a new trial.

The Court concludes that, under Federal Rule of Civil Procedure 11, no grounds exist for awarding plaintiff sanctions against defense counsel.  The Court also finds no

grounds for granting plaintiff relief from summary judgment
or a new trial.

In summary, the Court DENIES plaintiff's motion for
sanctions against counsel for defendants [#111-1]; for
relief of judgment [#112-1]; for recall of judgment [#112-
2]; for a new trial [#112-3]; for relief of judgment [#113-
1] for recall of summary judgment [#113-2]; for a new trial
[#113-3]; and DISMISSES this action.


IT IS SO ORDERED, this ___ day of February, 1994.

Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia


FEB 1 4 1994

L.D.T. CLERK
BY
DEPUTY CLERK


2

FILED IN CLERK'S OFFICE
U. S. D. C. - Atlanta

MAR 1 4 1994

LUTHER D. THOMAS

By:

Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND JONES,                          :

    Plaintiff,                     :    CIVIL ACTION

v.                                     :    1:88-cv-727-MHS

SECRETARY OF THE ARMY et al., :

    Defendants                     :

### ORDER

    This matter is presently before the Court on plaintiff's motion to waive filing fees on appeal. For the reasons stated below, the Court denies the motions.

    To appeal in forma pauperis, a litigant must show both that he is financially eligible for in forma pauperis status and that the appeal is taken in good faith. 28 U.S.C. § 1915(a); Pace v. Evans, 709 F.2d 1428, 1429 (11th Cir. 1983). "Good faith" means that the appeal presents issues of arguable legal merit. Id.

    Here plaintiff has not presented an affidavit to show that he is eligible for in forma pauperis status. Further, plaintiff has not shown that his appeal presents issues of arguable legal merit. Finally, plaintiff's appeal is distint from his previous appeals and is not a continuing one that could waive filing fees.

Accordingly, the Court DENIES appellant's motion to waive filing fees on appeal [#116].

IT IS SO ORDERED, this 9th day of March, 1994.

Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

ENTERED ON DOCKET

MAR 14 1994

L.D.T., CLERK

BY                    DEPUTY CLERK

2

404 335 6662        11th Circuit Clerk's Offic                    10:55:02 a.m.    01-18-2008        4/5

[DO NOT PUBLISH]



IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 94-8256
Non-Argument Calendar

D. C. Docket No. 1:88-CV-727-MHS

ROLAND A. JONES,

Plaintiff-Appellant,

versus

SECRETARY OF THE ARMY, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

(July 31, 1995)

Before TJOFLAT, Chief Judge, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

In *Jones v. Secretary of the Army et. al*, No. 91-8893, slip
op. (11th Cir. Oct. 29, 1992) (*Jones I*), we affirmed the district
court's dismissal of appellant's "Title VII claims of employment
discrimination, see 42 U.S.C. §§ 2000e-2000e-17, because Title
VII is inapplicable to members of the Armed forces. *Stinson v.
Hornsby*, 821 F.2d 1537, 1539 (11th Cir. 1987), cert. denied, 488
U.S. 959, 109 S.Ct. 402 (1988)." We also affirmed the district

LIBRARY, U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
PROPERTY OF THE U.S.

404 335 6662     11th Circuit Clerk's Offic     10:55:14 a.m.     01-18-2008     5/5

court's rejection of "appellant's claims under 42 U.S.C. §§ 1981 and 1985. . . ." and his claim "that the Army Board for the Correction of Military Records (ABCMR), and its agency heads, failed to fulfill their duty of reviewing his complaints regarding the correction of his military records." We said that "ABCMR's actions on appellant's application for correction of records were . . . appropriate and supported by substantial evidence."

On January 7, 1993, following the issuance of our mandate in Jones I, appellant moved the district court pursuant to Fed.R.Civ.P. 59(d) for a new trial on his sections 1981 and 1985 claims, and pursuant to Fed.R.Civ.P. 60(b)(1-3) for relief from the district court's final judgment of September 30, 1991. Both motions were clearly untimely; accordingly, the district court denied them. The court also denied as meritless appellant's Fed.R.Civ.P. motion for sanctions against appellees' counsel.

Appellant now appeals these rulings. In addition to challenging merits of the district court's disposition of his motions, however, appellant raises a plethora of issues that have nothing to do with whether the district court should have rejected appellant's post appeal motions as untimely. We consider none of those issues. We consider only the district court's disposition of appellant's Rule 59(d) and 60(b)(1-3) motions. As for those motions, the district court took the only action it could; it rejected them.

AFFIRMED.

2

124

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 0 4 1999

LUTHER D. THOMAS, Clerk
By:
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND A. JONES,                    :

    Plaintiff,              :    CIVIL ACTION

v.                                  :

                            :    1:88-cv-727-MHS

SECRETARY OF THE ARMY, et al.,:

    Defendants.             :

## ORDER

This action is before the Court on plaintiff's motion for the Court to revisit its summary judgment and adjudicate the remaining passover claim. Alternatively, plaintiff seeks to have this motion treated as a new action.

In 1991, the Court granted defendants' motion for summary judgment. Judgment was entered for defendants on September 30, 1991. Plaintiff appealed to the United States Court of Appeals for the Eleventh Circuit, which affirmed the decision of the Court in October 1995. Plaintiff's petition for writ of certiorari was denied in March 1996.

Rule 60(b) of the Federal Rules of Civil Procedure provides that under certain circumstances a court may provide relief from a judgment or order upon motion by a party. Plaintiff fails to satisfy the requirements for such relief.

AO 72A
(Rev.8/82)

Accordingly, the Court DENIES plaintiff's motion for the Court to revisit its summary judgment and to adjudicate a passover claim [#121-1, #121-2]; and DENIES plaintiff's motion for the court to accept defendant's suggestion that plaintiff's motion qualifies as a new lawsuit [#123-1].  If plaintiff wishes to file a new lawsuit, he must file a new complaint and pay the required filing fee.

IT IS SO ORDERED, this 3 day of May, 1999.

_____
Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

ENTERED ON DOCKET

MAY 0 5 1999

L.D.T., CLERK

DEPUTY CLERK

# United States Court of Appeals
## For the Eleventh Circuit



No. 99-11525ЯЯ
Non-Argument Calendar

District Court No. 88-00727-1-CV

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JAN 05 2000

THOMAS K. KAHN
CLERK

ROLAND A. JONES,

versus                                    Plaintiff-Appellant,

SECRETARY OF THE ARMY,
DEPARTMENT OF THE ARMY, et al.,

Defendants-Appellees.

------------------------------

Appeal from the United States District Court
for the Northern District of Georgia

------------------------------

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

J U D G M E N T

This cause came to be heard on the transcript of the record
from the United States District Court for the Northern District of
Georgia, and was taken under submission by the Court upon the
record and briefs on file, pursuant to Eleventh Circuit Rule 34-3;

UPON CONSIDERATION WHEREOF, it is now hereby ordered and
adjudged by this Court that the judgment of the said District Court
in this cause be and the same is hereby AFFIRMED;

It is FURTHER ORDERED THAT plaintiff-appellant pay to the
defendants-appellees, the costs on appeal to be taxed by the Clerk
of Court.

Entered: January 5, 2000
For the Court; Thomas K. Kahn, Clerk

By: _____
Deputy Clerk

ISSUED AS MANDATE: **APR 0 6 2000**es v. Geren, et al.,
Civil Action No. 07-2041                    Page 55 of 59

**[DO NOT PUBLISH]**

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JAN 05 2000

THOMAS K. KAHN
CLERK
```

No. 99-11525
Non-Argument Calendar

D.C. Docket No. 88-00727-1-CV-MHS

ROLAND A. JONES,

Plaintiff-Appellant,

versus

SECRETARY OF THE ARMY,
DEPARTMENT OF THE ARMY, <u>et al.</u>,

Defendants-Appellees.

Appeal from the United States District Court for the
Northern District of Georgia

(January 5, 2000)

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

PER CURIAM:

Roland A. Jones appeals the district court's denial of his motion for relief from judgment, Fed.R.Civ.P. 60(b), in civil rights action he has prosecuted pro se. We affirm.

Jones, who is black, was involuntarily retired from the U.S. Army in 1980 after being "passed over" twice for promotion to Colonel. In 1988, he brought this suit, alleging that the Army discriminated against him on account of his race in, among other things, assigning him duties, evaluating his performance, and determining whether to promote him. He also alleged that the Army Board for the Correction of Military Records failed to act on his requests for administrative review and correction of his Army records.

In September 1991, the district court entered judgment for the defendants on all of Jones' claims. He appealed, and we affirmed the district court's judgment.

Then, in June 1993, Jones filed motions in the district court for a new trial and for relief from judgment under Fed. R. Civ. P. 59(d) and 60(b). The district court denied his motions, concluding that Jones had demonstrated no grounds for relief. Jones appealed. Because his motions were untimely, we affirmed the district court's denial of relief.

In March 1999, Jones returned to the district court once again, moving the court to revisit the final judgment it had entered for the defendants and to adjudicate

2

his "pass-over" claim which it had declined to address on the merits before entering final judgment for the defendants. The defendants opposed Jones' motion as meritless and untimely. The court construed Jones motion as having been filed under Rule 60(b), and denied it because Jones failed to satisfy the Rule's requirements.

We review for abuse of discretion a district court's denial of Rule 60(b) relief. In this case, we find no abuse of discretion. This case is now at an end.

AFFIRMED.

3

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

MAR 2 7 2000

THOMAS K. KAHN
CLERK
```

No. 99-11525-AA

ROLAND A JONES,

                    Plaintiff-Appellant,

    versus

SECRETARY OF THE ARMY,
DEPARTMENT OF THE ARMY, et al.,

                    Defendants-Appellees.

--------------------------

On Appeal from the United States District Court for the
Northern District of Georgia

--------------------------

ON PETITION(S) FOR REHEARING AND SUGGESTION(S) OF REHEARING EN BANC
(Opinion_____, 11th Cir., 19__, ____F.2d____).

Before: TJOFLAT, BLACK and CARNES, Circuit Judges.

PER CURIAM:

The Petition(s) for Rehearing are DENIED and no member of this
panel nor other Judge in regular active service on the Court having
requested that the Court be polled on rehearing en banc (Rule 35,
Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5),
the Suggestion(s) of Rehearing En Banc are DENIED.

ENTERED FOR THE COURT:

_____
UNITED STATES CIRCUIT JUDGE

ORD-42
(6/95)

Jones v. Geren, et al.,
Civil Action No. 07-2041                    Page 59 of 59

Exhibit 6

CLOSED

# U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: 1:88–cv–00727–MHS

Jones v. Secretary of Army, et al

Assigned to: Judge Marvin H. Shoob

Demand: $750,000

Case in other court:  88–08815

　　　　　　　　　　　91–08893

　　　　　　　　　　　94–08256

　　　　　　　　　　　USCA 11th Cir., 88–08815

　　　　　　　　　　　A USCA 11th Circuit, :99–—11525

Cause: 42:2000 Job Discrimination (Race)

Date Filed: 04/01/1988

Date Terminated: 09/30/1991

Jury Demand: None

Nature of Suit: 442 Civil Rights: Jobs

Jurisdiction: U.S. Government Defendant

**Plaintiff**

| **Roland A. Jones** | represented by | **Roland A. Jones** |
| | | 1390 Heatherland Dr. |
| | | Atlanta, Ga 30331 |
| | | PRO SE |
| | | |
| | | **Hurl Richmond Taylor, Jr.** |
| | | Office of Hurl Richmond Taylor, Jr. |
| | | 3730 River Lake Shore |
| | | Ellenwood, GA 30294–1263 |
| | | 404–244–9575 |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| **Secretary of the Army** | represented by | **Daniel A. Caldwell, III** |
| *TERMINATED: 04/28/1989* | | Office of United States Attorney |
| | | Northern District of Georgia |
| | | 75 Spring Street, S.W. |
| | | 600 United States Courthouse |
| | | Atlanta, GA 30303 |
| | | 404–581–6224 |
| | | Email: dan.caldwell@usdoj.gov |
| | | *TERMINATED: 04/28/1989* |

**Defendant**

| **Department of the Army** | represented by | **Patricia Rebecca Stout** |
| *TERMINATED: 04/28/1989* | | Office of United States Attorney |
| | | Northern District of Georgia |
| | | 75 Spring Street, S.W. |
| | | 600 United States Courthouse |
| | | Atlanta, GA 30303 |
| | | 404–581–6000 |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Daniel A. Caldwell, III** |
| | | (See above for address) |
| | | *TERMINATED: 04/28/1989* |

**Defendant**

| **Army Board for Correction of Military Records** | represented by | **Daniel A. Caldwell, III** |
| | | (See above for address) |

*TERMINATED: 05/03/1990*

**Defendant**

**Army Personnel Agency**                    represented by   **Daniel A. Caldwell, III**
*(Provisional)*                                              (See above for address)
*TERMINATED: 04/28/1989*                                     *TERMINATED: 04/28/1989*

**Defendant**

**John W. Matthews**                         represented by   **Patricia Rebecca Stout**
*individually and in his capacity as*                        (See above for address)
*Executive Secretary for the Army Board*                     *LEAD ATTORNEY*
*for Correction of Military Records*                         *ATTORNEY TO BE NOTICED*

                                                             **Daniel A. Caldwell, III**
                                                             (See above for address)
                                                             *TERMINATED: 05/03/1990*

**Defendant**

**Karl Bielenberg**                          represented by   **Patricia Rebecca Stout**
*individually and in his capacity as*                        (See above for address)
*Executive Secretary for the Army Board*                     *LEAD ATTORNEY*
*for Correction of Military Records*                         *ATTORNEY TO BE NOTICED*

                                                             **Daniel A. Caldwell, III**
                                                             (See above for address)
                                                             *TERMINATED: 05/03/1990*

| Date Filed | # | clear | Docket Text |
|---|---|---|---|
| 04/01/1988 | 1 | | COMPLAINT w/attachments filed summons issued. Consent form to proceed before U.S. magistrate and pretrial instructions given to attorney. (km) (Entered: 04/12/1988) |
| 04/01/1988 | | | CASE REFERRED to Magistrate John E. Dougherty. (km) (Entered: 04/12/1988) |
| 06/06/1988 | 2 | | MOTION by defendant Karl Bielenberg, defendant John W. Matthews, defendant Army Personnel, defendant Army Bd Correction, defendant Dept of Army, defendant Secretary of Army to dismiss with memo and attachments in support. (km) (Entered: 06/07/1988) |
| 06/07/1988 | 3 | | Attorney appearance for Roland A. Jones by Hurl R. Taylor, Jr. (km) (Entered: 06/08/1988) |
| 06/16/1988 | 5 | | RESPONSE w/attachments by defendant Karl Bielenberg, defendant John W. Matthews, defendant Army Personnel, defendant Army Bd Correction, defendant Dept of Army, defendant Secretary of Army to motion for default judgment against Karl John W. Matthews, Army Personnel, Army Bd Correction, Dept of Army, Secretary of Army by plaintiff [4−1] (km) (Entered: 06/20/1988) |
| 06/17/1988 | 4 | | MOTION by plaintiff Roland A. Jones for default judgment against Karl Bielenberg, John W. Matthews, Army Personnel, Army Bd Correction, Dept of Army, Secretary of Army with attachments in support. (km) (Entered: 06/20/1988) |
| 06/17/1988 | 6 | | RESPONSE w/attachments by plaintiff Roland A. Jones to motion to dismiss by defendants [2−1] (km) (Entered: 06/20/1988) |
| 06/20/1988 | | | SUBMITTED to Magistrate John E. Dougherty on motion for default judgment against Karl Bielenberg, John W. Matthews, Army Personnel, Army Bd Correction, Dept of Army, Secretary of Army by plaintiff [4−1], and motion to dismiss by defendant [2−1] (km) (Entered: 06/20/1988) |

| | | |
|---|---|---|
| 06/20/1988 | 7 | OBJECTION by Roland A. Jones to response to motion for default judgment against Karl Bielenberg, John W. Matthews, Army Personnel, Army Bd Correction, Dept of Army, Secretary of Army by plaintiff [4−1]. (km) (Entered: 06/20/1988) |
| 06/29/1988 | 8 | REQUEST by counsel for Roland A. Jones to allow pla to continue to represent himself . (MHS a/a/n) (km) (Entered: 06/30/1988) |
| 07/05/1988 | 9 | MOTION by plaintiff Roland A. Jones to amend complaint [1−1] . (km) (Entered: 07/06/1988) |
| 07/15/1988 | 10 | MOTION by defendant Karl Bielenberg, defendant John W. Matthews, defendant Army Personnel, defendant Army Bd Correction, defendant Dept of Army, defendant Secretary of Army to dismiss with memo in support. (JED) (km) (Entered: 07/18/1988) |
| 07/15/1988 | 11 | MOTION by defendant Karl Bielenberg, defendant John W. Matthews, defendant Army Personnel, defendant Army Bd Correction, defendant Dept of Army, defendant Secretary of Army to stay discovery with memo in support. (JED) (km) (Entered: 07/18/1988) |
| 07/18/1988 | 12 | RESPONSE by plaintiff Roland A. Jones to motion to stay discovery by defendant [11−1] (km) (Entered: 07/18/1988) |
| 07/18/1988 | 13 | RESPONSE w/attachments by plaintiff Roland A. Jones to motion to dismiss by defendant [10−1] (km) (Entered: 07/18/1988) |
| 07/18/1988 | | SUBMITTED to Magistrate John E. Dougherty on motion to stay discovery by defendant [11−1], motion to dismiss by defendant [10−1], and motion to amend complaint [1−1] by Roland A. Jones [9−1] (km) (Entered: 07/18/1988) |
| 09/08/1988 | 14 | REPORT AND RECOMMENDATION of Magistrate John E. Dougherty that motion to dismiss by defendant [2−1] be GRANTED as to pla's Title VII claims, and motion for default judgment [4−1] be DENIED with ORDER for service. cc (km) (Entered: 09/09/1988) |
| 09/26/1988 | 15 | Objections w/attachments by plaintiff Roland A. Jones to report &recommendation [14−1] (km) (Entered: 09/27/1988) |
| 09/27/1988 | | SUBMITTED to Judge Marvin H. Shoob on report &recommendation [14−1] (km) (Entered: 09/27/1988) |
| 10/17/1988 | 16 | ORDER ADOPTING report &recommendation [14−1] as the order of this court; GRANTING IN PART AND DENYING IN PART motion to dismiss by defendant [2−1]; DENYING motion for default judgment against Karl Bielenberg, John W. Matthews, Army Personnel, Army Bd Correction, Dept of Army, Secretary of Army by plaintiff [4−1] and DIRECTING the magistrate to address pla's remaining claims and dfts' motion to dismiss by Judge Marvin H. Shoob. cc (km) (Entered: 10/17/1988) |
| 10/17/1988 | | SUBMITTED to Magistrate John E. Dougherty on motion to dismiss by defendant [10−1] per order [16−1] (km) (Entered: 10/17/1988) |
| 10/28/1988 | 17 | NOTICE OF APPEAL from order [16−1] by plaintiff Roland A. Jones. cc, cert copy of dkt, noa, order [16−1] to USCA. FEES PAID (km) (Entered: 11/01/1988) |
| 11/10/1988 | | Court of Appeals appeal by Roland A. Jones [17−1] acknowledgement. USCA dkt no. 88−8815 (km) (Entered: 11/15/1988) |
| 01/10/1989 | 18 | REPORT AND RECOMMENDATION of Magistrate John E. Dougherty that dfts' motion to dismiss be Granted in part and motion to dismiss by defendants [10−1] be DENIED as to ABCMR, Matthews and Bielenberg with ORDER for service. cc (km) (Entered: 01/11/1989) |
| 01/26/1989 | 19 | MOTION by plaintiff Roland A. Jones to compel response (km) (Entered: 01/27/1989) |

| 01/26/1989 | 20 | Objections with attachments by plaintiff Roland A. Jones to report &recommendation [18–1] (km) (Entered: 01/27/1989) |
|---|---|---|
| 01/26/1989 | | SUBMITTED to Judge Marvin H. Shoob on report &recommendation [18–1] (km) (Entered: 01/27/1989) |
| 02/06/1989 | 21 | Certified copy of ORDER of the U.S. Court of Appeals that appeal by Roland A. Jones [17–1] is DISMISSED for lack of jursidiction. cc (km) (Entered: 02/08/1989) |
| 02/09/1989 | 22 | MOTION by defendant John W. Matthews, defendant Karl Bielenberg to dismiss with memorandum in support. (JED) (km) (Entered: 02/10/1989) |
| 02/13/1989 | 23 | OPPOSITION by plaintiff Roland A. Jones to motion to dismiss by Karl Bielenberg, John W. Matthews [22–1] (km) (Entered: 02/15/1989) |
| 02/15/1989 | | SUBMITTED to Magistrate John E. Dougherty on motion to dismiss by Karl Bielenberg, John W. Matthews [22–1], motion to compel response by Roland A. Jones [19–1] (km) (Entered: 02/15/1989) |
| 04/12/1989 | 24 | Petition by plaintiff Roland A. Jones for reconsideration , or for 54(b) certification . (JED) (km) (Entered: 04/13/1989) |
| 04/28/1989 | 25 | ORDER GRANTING IN PART AND DENYING IN PART motion to dismiss 10 ; DIRCTING pla to serve dfts Matthews and Bielenberg within 30 days; DENYING petition for 54(b) certification by Roland A. Jones [24–0] by Judge Marvin Shoob. cc (km) (Entered: 05/01/1989) |
| 05/12/1989 | 26 | OBJECTIONS to order [25–1] and REQUEST with attachments by plaintiff Roland A. Jones for clarification . (km) (Entered: 05/12/1989) |
| 05/12/1989 | 27 | REQUEST by Roland A. Jones for alternate service , or t extend time . (km) (Entered: 05/15/1989) |
| 05/15/1989 | 28 | MOTION by defendant Army Bd Correction to extend time to answer complaint [1–0] through 5/25/89 with memorandum and proposed order. (MHS a/a/n) (km) (Entered: 05/16/1989) |
| 05/17/1989 | 29 | ORDER GRANTING motion to extend time to answer complaint [1–0] through 5/25/89 by Army Bd Correction [28–1] Answer due 5/25/89 for Army Bd Correction by Magistrate John E. Dougherty. cc (km) (Entered: 05/18/1989) |
| 05/24/1989 | 30 | MOTION by defendant Army Bd Correction to extend time to answer complaint [1–0] through 6/6/89 with memorandum and attachments in support. (JED) (km) (Entered: 05/25/1989) |
| 05/30/1989 | | Summons issued as to John W. Matthews and Karl Bielenberg and returned to pla for service. (km) (Entered: 05/31/1989) |
| 05/30/1989 | 31 | Opposition by plaintiff Roland A. Jones to order [25–1] (km) (Entered: 05/31/1989) |
| 05/30/1989 | 32 | OPPOSITION by plaintiff Roland A. Jones to motion to extend time to answer complaint [1–0] through 6/6/89 by Army Bd Correction [30–1] (km) (Entered: 05/31/1989) |
| 05/31/1989 | | SUBMITTED to Jugde Marvin H. Shoob on motion to extend time to answer complaint [1–0] through 6/6/89 by Bd Correction [30–1] (km) Modified on 05/31/1989 (Entered: 05/31/1989) |
| 06/02/1989 | | SUBMITTED to Judge Marvin H. Shoob on Request for alternate service by Roland A. Jones [27–1], Request to extend time by Roland A. Jones [27–2], and motion for clarification by Roland A. Jones [26–1] (km) (Entered: 06/02/1989) |
| 06/06/1989 | 33 | ORDER by Judge Marvin H. Shoob GRANTING motion to extend time to answer complaint [1–0] through 6/6/89 by Army Bd Correction [30–1] Answer due 6/6/89 for Army Bd Correction; denying as moot the Request to extend time [27–2] by Roland A. Jones; DENYING motion for |

| | | |
|---|---|---|
| | | clarification by Roland A. Jones [26–1]; GRANTING Request to allow pla to continue to represent himself by Roland A. Jones [8–0]; GRANTING motion to amend complaint [1–1] by Roland A. Jones [9–0]; denying as moot the motion to stay discovery [11–0] by defendant; DENYING motion to compel response by Roland A. Jones [19–0]. cc (km) (Entered: 06/07/1989) |
| 06/06/1989 | 34 | MOTION by defendant Army Bd Correction for summary judgment with memorandum, statement of facts and attachments in support. (motion is 2 vols.) NOTICE MAILED (km) (Entered: 06/07/1989) |
| 06/20/1989 | 35 | Return of service executed 5/30/89 as to John W. Matthews on original complaint. (left copies with US Atty's office) (km) (Entered: 06/21/1989) |
| 06/20/1989 | 36 | Return of service executed 5/30/89 as to Karl Bielenberg on original complaint. (left copies at US Atty's office) (km) (Entered: 06/21/1989) |
| 06/21/1989 | 37 | OPPOSITION with attachments by plaintiff Roland A. Jones to motion for summary judgment by Army Bd Correction [34–1] (km) (Entered: 06/22/1989) |
| 06/22/1989 | | SUBMITTED to Judge Marvin H. Shoob on motion for summary judgment by Army Bd Correction [34–1] (km) (Entered: 06/22/1989) |
| 07/03/1989 | 38 | MOTION by plaintiff Roland A. Jones for default judgment against John W. Matthews, Karl Bielenberg . (MHS) (km) (Entered: 07/06/1989) |
| 07/10/1989 | 39 | Memorandum in RESPONSE by defendant Karl Bielenberg, defendant John W. Matthews to motion for default judgment [38–1]. (MHS) (km) (Entered: 07/11/1989) |
| 07/11/1989 | | SUBMITTED to Judge Marvin H. Shoob on motion for default judgment [38–1] (km) (Entered: 07/11/1989) |
| 07/12/1989 | 40 | MOTION by plaintiff Roland A. Jones to strike dfts' memorandum in response to pla's motion for default. (MHS) (km) (Entered: 07/14/1989) |
| 07/28/1989 | 41 | MOTION by defendant Karl Bielenberg, defendant John W. Matthews to dismiss with memorandum and attachments in support. (MHS) (km) (Entered: 07/31/1989) |
| 08/01/1989 | | SUBMITTED to Judge Marvin H. Shoob on motion to strike by Roland A. Jones [40–1] (km) (Entered: 08/01/1989) |
| 08/04/1989 | 42 | RESPONSE by plaintiff Roland A. Jones to motion to dismiss by John W. Matthews, Karl Bielenberg [41–1] (km) (Entered: 08/07/1989) |
| 08/04/1989 | 43 | MOTION by plaintiff Roland A. Jones to strike motion to dismiss by dfts, and for entry of default with brief in support. (km) (Entered: 08/07/1989) |
| 08/07/1989 | | SUBMITTED to Judge Marvin H. Shoob on motion to dismiss by John W. Matthews, Karl Bielenberg [41–1] (km) (Entered: 08/07/1989) |
| 08/25/1989 | | SUBMITTED to Judge Marvin H. Shoob on motion to strike by Roland A. Jones [43–1], motion for entry of default by Roland A. Jones [43–2] (km) (Entered: 08/25/1989) |
| 11/28/1989 | 44 | MOTION by defendant Karl Bielenberg, defendant John W. Matthews, defendant Army Bd Correction for protective order with memorandum in support. (km) (Entered: 11/30/1989) |
| 11/30/1989 | 45 | MOTION by plaintiff Roland A. Jones to compel with attachments in support. (km) (Entered: 12/04/1989) |
| 12/21/1989 | | SUBMITTED to Judge Marvin H. Shoob on motion for protective order by Army Bd Correction, John W. Matthews, Karl Bielenberg [44–1], motion to compel by Roland A. Jones [45–1] (km) (Entered: 12/21/1989) |
| 04/11/1990 | 46 | ORDER DEFERRING ruling on motion for summary judgment by Army Bd Correction [34–1] until 30 days after close of discovery; dfts are |

| | | |
|---|---|---|
| | | DIRECTED to file answers within 20 days; Pla is DIRECTED to amend his response to dfts' motion for summary judgment; DENYING motion for default judgment against John W. Matthews, Karl Bielenberg by Roland A. Jones [38–1]; DENYING motion for entry of default by Roland A. Jones [43–2]; DENYING motion to strike by Roland A. Jones [43–1]; DENYING motion to strike by Roland A. Jones [40–1]; DENYING motion dismiss by John W. Matthews, Karl Bielenberg [41–1]; denying as moot the motion to compel [45–1] by Roland A. Jones and the motion for protective order [44–1] by Army Bd Correction, John W. Matthews, Karl Bielenberg by Judge Marvin H. Shoob. cc (km) (Entered: 04/12/1990) |
| 04/25/1990 | 47 | MOTION by defendant Army Bd Correction, defendant John W. Matthews, defendant Karl Bielenberg for clarification of period within which discovery response is required , or t extend time to file response to pla's discovery to 5/30/90 with memorandum in support. (km) (Entered: 04/26/1990) |
| 04/27/1990 | 48 | OPPOSITION by Roland A. Jones to motion to extend time to file response to pla's discovery to 5/30/90 by dfts [47–1]. (km) (Entered: 04/30/1990) |
| 04/30/1990 | | SUBMITTED to Judge Marvin H. Shoob on motion for clarification of period within which discovery response is required by dfts [47–1]. (km) (Entered: 04/30/1990) |
| 05/01/1990 | 49 | ANSWER to complaint [1–0] by Dept of Army, John W. Matthews, Karl Bielenberg. (km) (Entered: 05/02/1990) |
| 05/02/1990 | 50 | ORDER GRANTING motion for clarification of period within which discovery response is required [47–1], and DENYING motion to extend time to file response to pla's discovery to 5/30/90 by plas [47–2] by Judge Marvin H. Shoob. Dfts DIRECTED to file responses to pla's discovery by 5/25/90. cc (km) (Entered: 05/03/1990) |
| 06/04/1990 | 51 | Amendment with attachments to response [37–1] by plaintiff Roland A. Jones to dfts' motion for summary judgment. (km) (Entered: 06/05/1990) |
| 06/08/1990 | 52 | Notice to take deposition of ROLAND A. JONES by defendant Karl Bielenberg, defendant John W. Matthews, defendant Army Bd Correction (km) (Entered: 06/11/1990) |
| 06/12/1990 | 53 | MOTION by plaintiff Roland A. Jones to terminate deposition upon oral examination . (MHS for direction) (km) (Entered: 06/13/1990) |
| 06/13/1990 | 54 | Notice of change of date of deposition by defendants (km) (Entered: 06/13/1990) |
| 06/15/1990 | 55 | RESPONSE by defendant Karl Bielenberg, defendant John W. Matthews, defendant Army Bd Correction to motion to terminate deposition upon oral examination by Roland A. Jones [53–1] (km) (Entered: 06/20/1990) |
| 07/05/1990 | | SUBMITTED to Judge Marvin H. Shoob on motion to terminate deposition upon oral examination by Roland A. Jones [53–1] (km) (Entered: 07/05/1990) |
| 07/09/1990 | 56 | ORDER DENYING motion to terminate deposition upon oral examination by Roland A. Jones [53–1] by Judge Marvin H. Shoob. cc (km) (Entered: 07/11/1990) |
| 07/16/1990 | 57 | RESPONSE (letter) to order [56–1] by plaintiff Roland A. Jones. (MHS fyi) (km) (Entered: 07/18/1990) |
| 07/18/1990 | 58 | Notice to take deposition of ROLAND A. JONES by defendants (km) (Entered: 07/19/1990) |
| 08/03/1990 | 59 | MOTION by defendants to compel discovery , and for discovery conference with memorandum and attachments in support. (km) (Entered: 08/07/1990) |

| 08/09/1990 | 60 | RESPONSE by plaintiff Roland A. Jones to motion to compel discovery by Army Bd Correction, John W. Matthews, Karl Bielenberg [59−1] (km) (Entered: 08/10/1990) |
|---|---|---|
| 08/10/1990 |  | SUBMITTED to Judge Marvin H. Shoob on motion to compel discovery by Army Bd Correction, John W. Matthews, Karl Bielenberg [59−1] (km) (Entered: 08/10/1990) |
| 08/13/1990 | 61 | Amendment to response [60−1] by plaintiff Roland A. Jones. (km) (Entered: 08/14/1990) |
| 08/13/1990 | 62 | CLARIFICATION of dfts' motion to compel and for discovery conference, and REPLY to response to motion to compel discovery [59−1] (km) (Entered: 08/16/1990) |
| 08/15/1990 | 63 | ORDER GRANTING motion to compel discovery by dfts [59−1], DENYING request for costs and atty's fees and DENYING motion for discovery conference by dfts [59−2] by Judge Marvin H. Shoob. cc (km) (Entered: 08/16/1990) |
| 08/15/1990 | 64 | RESPONSE by plaintiff Roland A. Jones to dfts' clarification to pla's response to dft's motion to compel. (km) (Entered: 08/20/1990) |
| 08/21/1990 | 65 | Notice to take deposition of ROLAND A. JONES by defendant Karl Bielenberg, defendant John W. Matthews, defendant Army Bd Correction (km) (Entered: 08/22/1990) |
| 08/29/1990 | 66 | MOTION by plaintiff Roland A. Jones to compel with brief and attachments in support. (km) (Entered: 08/29/1990) |
| 09/04/1990 | 67 | MOTION by defendants for sanctions , and for default judgment , and request for hearing with memorandum and attachments in support. (km) (Entered: 09/12/1990) |
| 09/07/1990 | 68 | Proposed Findings of fact by pla. (km) (Entered: 09/14/1990) |
| 09/07/1990 | 69 | RESPONSE by Roland A. Jones to motion for sanctions [67−1], for default judgment [67−2], and request for hearing by Army Bd Correction, John W. Karl Bielenberg [67−3] (km) (Entered: 09/14/1990) |
| 09/12/1990 | 70 | REPLY by dfts to response to motion for sanctions [67−1], and for default judgment [67−2], and request for hearing (km) (Entered: 09/16/1990) |
| 09/12/1990 | 71 | RESPONSE by defendants to pla's proposed findings of fact [68−1] (km) (Entered: 09/16/1990) |
| 09/12/1990 | 72 | RESPONSE by defendants to motion to compel by Roland A. Jones [66−1] (km) (Entered: 09/16/1990) |
| 09/14/1990 | 73 | RESPONSE by plaintiff to reply to response to motion for sanctions [67−1], and for default judgment [67−2], and request for hearing by dfts [67−3] (km) (Entered: 09/17/1990) |
| 09/19/1990 |  | SUBMITTED to Judge Marvin H. Shoob on motion to compel by Roland A. Jones [66−1] (km) (Entered: 09/19/1990) |
| 09/27/1990 |  | SUBMITTED to Judge Marvin H. Shoob on motion for sanctions [67−1], and for default judgment [67−2], and request for hearing by Army Bd Correction, John W. Matthews, Karl Bielenberg [67−3] (km) (Entered: 09/27/1990) |
| 10/01/1990 | 74 | MOTION by defendants to extend time to file pretrial order until the Court rules on the pending motion for summary judgment with memorandum in support. (km) (Entered: 10/04/1990) |
| 10/23/1990 |  | SUBMITTED to Judge Marvin H. Shoob on motion to extend time to file pretrial order until the Court rules on the pending motion for summary judgment by Army Bd Correction, John W. Matthews, Karl Bielenberg [74−1] (km) (Entered: 10/23/1990) |

| 01/10/1991 | 75 | ORDER by Judge Marvin H. Shoob DENYING motion for sanctions [67–1], motion for default judgment [67–2], and motion for hearing by Karl Bielenberg, John W. Matthews, Army Bd Correction [67–3]; DENYING motion to compel by Roland A. Jones [66–1]; GRANTING motion to extend time to file pretrial order until 30 days after the Court rules on the pending motion for summary judgment [74–1]; DEFERRING ruling on motion for summary judgment by Army Bd Correction [34–1] until 2/11/91. cc (km) (Entered: 01/11/1991) |
| 01/14/1991 | 76 | REQUEST by Roland A. Jones for clarification of 1/11/91 order . (km) (Entered: 01/15/1991) |
| 02/04/1991 | | SUBMITTED to Judge Marvin H. Shoob on Request motion for clarification of 1/11/91 order by Roland A. Jones [76–1] (scg) (Entered: 02/04/1991) |
| 02/04/1991 | 77 | Notice to take deposition of Roland A. Jones by defendant Secretary of Army (scg) (Entered: 02/05/1991) |
| 04/02/1991 | 78 | ORDER DIRECTING plaintiff to file w/in 15 days a brief, not to exceed 10 pgs. outlining reasons for delay in filing motion for summary judgment; defendants will have 15 days thereafter in which to respond; Court will proceed to rule on defendants' motion for summary judgment &such ruling may render moot plaintiff's motion for summary judgment; by Judge Marvin H. Shoob. cc (scg) (Entered: 04/03/1991) |
| 04/03/1991 | | SUBMITTED on motion for summary judgment by Army Bd Correction [34–1] to Judge Marvin H. Shoob . (scg) (Entered: 04/03/1991) |
| 04/03/1991 | | (mjw) (Entered: 04/03/1991) |
| 04/08/1991 | 79 | RESPONSE by plaintiff to order [78–1], motion for summary judgment by Army Bd Correction [34–1] (styled "Withdrawal of Plaintiff's question of summary judgment &advisory of fulfillment of Court's order of 1/10/91") (scg) (Entered: 04/08/1991) |
| 04/08/1991 | | Appeal [0–0] acknowledgement. USCA dkt no. 91–8262 (scg) (Entered: 04/10/1991) |
| 04/09/1991 | 80 | Amendment to response [79–1] by plaintiff Roland A. Jones . (scg) (Entered: 04/10/1991) |
| 04/11/1991 | 81 | SUPPLEMENTAL BRIEF by defendants in support of motion for summary judgment [34–1] (scg) (Entered: 04/12/1991) |
| 04/11/1991 | | Deposition of ROLAND A. JONES taken for defendants (in support of motion for summary judgment) [34–1]. (scg) (Entered: 04/12/1991) |
| 04/15/1991 | 82 | Objections by plaintiff to supplemental brief by defendants [81–1] (scg) (Entered: 04/15/1991) |
| 04/17/1991 | 83 | Amendment to objection [82–1] by plaintiff Roland A. Jones . (scg) (Entered: 04/17/1991) |
| 07/08/1991 | 84 | ORDER GRANTING defendants' motion for summary judgment [34–1] on plaintiff's 42 USC 1981 &1985 claims; DEFERRING ruling on motion for summary judgment by defendants [34–1] on plaintiff's remaining claims; DIRECTING parties to file briefs w/in 15 days; by Judge Marvin H. Shoob. cc (scg) (Entered: 07/08/1991) |
| 07/22/1991 | 85 | RESPONSE by plaintiff to order [84–1]. (scg) (Entered: 07/23/1991) |
| 07/22/1991 | 86 | SUPPLEMENTAL BRIEF (Information Supplement) by plaintiff in support of response [85–1] (scg) (Entered: 07/23/1991) |
| 07/22/1991 | 87 | MOTION by defendants to extend time to respond to order [84–1] with brief in support. (to MHS) (scg) (Entered: 07/23/1991) |
| 07/25/1991 | 88 | Objections by plaintiff to motion to extend time to respond to order [84–1] by defendants [87–1] (scg) (Entered: 07/25/1991) |

| | | |
|---|---|---|
| 07/25/1991 | | SUBMITTED on motion to extend time to respond to order [84–1] by defendants [87–1] to Judge Marvin H. Shoob . (scg) (Entered: 07/25/1991) |
| 07/29/1991 | 89 | ORDER GRANTING motion to extend time to 8/9/91 to respond to order [84–1] by defendants [87–1] by Judge Marvin H. Shoob. cc (MHS). (lk) Modified on 08/14/1991 (Entered: 07/29/1991) |
| 08/14/1991 | | SUBMITTED on motion for summary judgment by Army Bd Correction [34–1], order [84–1] to Judge Marvin H. Shoob . (scg) (Entered: 08/14/1991) |
| 08/20/1991 | 90 | MOTION by defendant for leave to file response to court's order out of time with brief in support &RESPONSE to court's order of 7/5/91. (scg) (Entered: 08/21/1991) |
| 08/22/1991 | 91 | MOTION by plaintiff to deny , or to strike defendants motion to file out of time &motion for expedited ruling on defendants' motion for summary judgment with brief in support. (scg) (Entered: 08/26/1991) |
| 08/23/1991 | 92 | BRIEF by plaintiff (additional information) regarding motion for summary judgment. (scg) (Entered: 08/26/1991) |
| 09/30/1991 | 93 | ORDER GRANTING motion for summary judgment by defendants [34–1] on plaintiff's remaining claims by Judge Marvin H. Shoob. cc (scg) (Entered: 10/01/1991) |
| 09/30/1991 | 94 | JUDGMENT ENTERED on complaint [1–0] for defendants Army Bd Correction, John W. Matthews, &Karl Bielenberg against plaintiff Roland A. Jones for costs of this action. cc (scg) (Entered: 10/01/1991) |
| 10/03/1991 | 95 | NOTICE OF APPEAL from order [93–1] by plaintiff Roland A. Jones. Fees pd. Rec. #166552. cy.dkt., ntc., &order to USCA (scg) (Entered: 10/10/1991) |
| 10/17/1991 | | Court of Appeals appeal by Roland A. Jones [95–1] acknowledgement. USCA dkt no. 91–8893 (scg) (Entered: 11/01/1991) |
| 10/30/1991 | | FORTHWITH LETTER from U.S. Court of Appeals appeal by Roland A. Jones [95–1] requesting the Certificate of Readiness. (er) (Entered: 11/01/1991) |
| 11/04/1991 | | CERTIFICATE OF READINESS OF RECORD ON APPEAL with certified copy of docket mailed to USCA consisting of 7 vols of pleadings and one deposition. (er) (Entered: 11/05/1991) |
| 11/05/1991 | | Acknowledgement of receipt by USCA of certificate of readiness of appeal record [0–1] (scg) (Entered: 11/13/1991) |
| 01/31/1992 | | FORTHWITH LETTER from U.S. Court of Appeals regarding Court of Appeals appeal by Roland A. Jones [95–1] requesting the record on appeal. (er) (Entered: 02/03/1992) |
| 02/03/1992 | | Certified and TRANSMITTED RECORD to U.S. Court of Appeals appeal by Roland A. Jones [95–1] consisting of seven vols of pleadings and one vol of deposition. (er) (Entered: 02/03/1992) |
| 02/04/1992 | | Acknowledgement of receipt by USCA of appeal record [0–0] (scg) (Entered: 02/20/1992) |
| 01/07/1993 | 96 | MOTION by pla pursuant to Rules 60(b)(1–3, &6) &59(d) FRCP &for sanctions against counsel for dfts with brief &exhibits in support. (scg) Modified on 01/15/1993 (Entered: 01/08/1993) |
| 01/08/1993 | 97 | Amendment to motion for sanctions against counsel for dfts [96–1] by pla. (scg) (Entered: 01/11/1993) |
| 01/14/1993 | 98 | Response by dfts in opposition to motion pursuant to Rules 60(b)(1–3, &6) &59(d) FRCP &for sanctions against counsel for dfts by pla [96–1] (scg) (Entered: 01/15/1993) |

| 01/19/1993 | 100 | RESPONSE by pla to opposition by dfts to motion pursuant to Rules 60(b)(1–3, &6) &59(d) FRCP &for sanctions against counsel for dfts by pla [96–1]. (scg) (Entered: 01/22/1993) |
| 01/21/1993 | 99 | Reply by dfts to pla's response to dfts' opposition to motion pursuant to Rules 60(b)(1–3, &6) &59(d) FRCP &for sanctions against counsel for dfts by pla [96–1] (scg) (Entered: 01/22/1993) |
| 01/22/1993 | | SUBMITTED on motion pursuant to Rules 60(b)(1–3, &6) &59(d) FRCP &for sanctions against counsel for dfts by pla [96–1] to Judge Marvin H. Shoob. (scg) (Entered: 01/22/1993) |
| 01/25/1993 | 101 | Reply by pla to dfts reply to pla's response to dfts' opposition to motion pursuant to Rules 60(b)(1–3, &6) &59(d) FRCP &for sanctions against counsel for dfts by pla [96–1] (scg) (Entered: 02/03/1993) |
| 02/02/1993 | 102 | ORDER striking pla's motion for sanctions [96–1], pla may refile motion when USCA has ruled on his appeal; by Judge Marvin H. Shoob. cc (scg) (Entered: 02/03/1993) |
| 02/05/1993 | 103 | MOTION by pla for clarification of 2/1/93 order with brief in support. (scg) (Entered: 02/08/1993) |
| 02/09/1993 | 104 | MOTION by pla for relief of judgment , and for new trial with brief in support. (scg) (Entered: 02/11/1993) |
| 02/10/1993 | 105 | MOTION by dfts for relief from responding to further motions filed by pla in USDC with brief in support. (scg) (Entered: 02/11/1993) |
| 02/10/1993 | 106 | ORDER on pla's motion for clarification of 2/1/93 order [103–1] DIRECTING pla to file no furhter pleadings in this court since this court lacks jurisdiction; by Judge Marvin H. Shoob. cc (scg) (Entered: 02/11/1993) |
| 02/17/1993 | 107 | ORDER striking pla's motion for relief from judgment [104–1] &for new trial [104–2], GRANTING motion for relief from responding to further motions filed by pla by dfts [105–1] as long as this court lacks jurisdiction; by Judge Marvin H. Shoob. cc (scg) (Entered: 02/18/1993) |
| 03/04/1993 | 108 | Certified copy of JUDGMENT OF USCA AFFIRMING judgment of this court, Court of Appeals appeal [95–1], further that appellant pay to appellees the costs on appeal. cc (scg) (Entered: 03/10/1993) |
| 03/05/1993 | 109 | Certified copy of ORDER of the U.S. Court of Appeals DENYING appellant's motion for stay pending petition for writ of certiorari. cc (scg) (Entered: 03/10/1993) |
| 03/05/1993 | | Record on appeal returned from USCA (7 vols &1 env. exhibits) (scg) (Entered: 03/10/1993) |
| 03/11/1993 | 110 | Response by pla to order [107–1] (scg) (Entered: 03/16/1993) |
| 06/15/1993 | 111 | MOTION by pla for sanctions against counsel for dfts with brief in support. (scg) (Entered: 06/16/1993) |
| 06/15/1993 | 112 | MOTION by pla for relief of judgment , and/or recall of judgment , and/or for new trial . (scg) (Entered: 06/16/1993) |
| 06/15/1993 | 113 | MOTION by pla for relief of judgment , and/or recall of summary judgment , and/or for new trial with brief &exhibits in support. (scg) (Entered: 06/16/1993) |
| 06/15/1993 | 114 | Memorandum by pla in support of motions by pla for relief of judgment [112–1], [113–1], for recall of judgment [112–2], [113–2], for new trial [112–3], [113–3]. (scg) (Entered: 06/16/1993) |
| 07/26/1993 | | SUBMITTED on motion for sanctions against counsel for dfts by pla [111–1], motion for relief of judgment [112–1], for recall of judgment [112–2], &for new trial [112–3] by pla, motion for relief of judgment [113–1], for recall of summary judgment [113–2], &for new trial [113–3] |

| | | |
|---|---|---|
| | | by pla to Judge Marvin H. Shoob. (scg) (Entered: 07/26/1993) |
| 02/10/1994 | 115 | ORDER by Judge Marvin H. Shoob DENYING motions for sanctions against counsel for dfts by pla [111−1], for new trial by pla [112−3], for recall of judgment by pla [112−2], for relief of judgment by pla [112−1], for new trial by pla [113−3], for recall of summary judgment by pla [113−2], and for relief of judgment by pla [113−1]. cc (km) (Entered: 02/14/1994) |
| 02/17/1994 | 116 | NOTICE OF APPEAL from order [115−1] by pla Roland A. Jones. (Letter requesting fees sent to pla &cpy to USCA) (er) (Entered: 02/22/1994) |
| 02/17/1994 | 116 | MOTION by pla Roland A. Jones to waive filing fees (to proceed on appeal ifp) with brief in support. (er) (Entered: 02/23/1994) |
| 03/07/1994 | | SUBMITTED on motion to waive filing fees (to proceed on appeal ifp) by Roland A. Jones [116−1] to Judge Marvin Shoob. (er) (Entered: 03/07/1994) |
| 03/07/1994 | | Certified copy of notice of appeal [116−1], order [115−1], docket to U.S.Court of Appeals appeal by Roland A. Jones. (er) (Entered: 03/07/1994) |
| 03/08/1994 | | Acknowledgment by Court of Appeals regarding appeal by Roland A. Jones [116−1]. USCA dkt no. 94−8256 (cbm) (Entered: 03/25/1994) |
| 03/14/1994 | 117 | ORDER DENYING motion to waive filing fees (to proceed on appeal ifp) by Roland A. Jones [116−1]; by Judge Marvin H. Shoob. cc/cert/cpy to USCA (er) (Entered: 03/14/1994) |
| 03/16/1994 | | USCA appeal fees received $105.00, receipt #201075. (ntc to USCA) (er) (Entered: 04/27/1994) |
| 04/15/1994 | | Acknowledgment of receipt of order [117−1] by USCA. (er) (Entered: 04/25/1994) |
| 04/15/1994 | | FORTHWITH LETTER from U.S. Court of Appeals requesting documents #111, 112, and 113. (er) (Entered: 04/25/1994) |
| 05/03/1994 | | Document #s [111−1], [112−1], and [113−1] to U. S. Court of Appeals as per their request w/cert/cpy of docket sheet. (er) (Entered: 05/03/1994) |
| 05/25/1994 | | Request for Certificate of Readiness from Court of Appeals regarding appeal. (fem) (Entered: 06/08/1994) |
| 06/23/1994 | | CERTIFICATE OF READINESS OF RECORD ON APPEAL with certified copy of docket mailed to USCA. (10 vol. pleadings; 1 deposition). (fem) (Entered: 06/23/1994) |
| 07/08/1994 | | USCA acknowledges receipt of COR. (fem) (Entered: 07/08/1994) |
| 10/03/1994 | | FORTHWITH LETTER from U.S. Court of Appeals regarding appeal. (fem) (Entered: 10/04/1994) |
| 10/24/1994 | | 2ND FORTHWITH LETTER from U.S. Court of Appeals regarding appeal by Roland A. Jones [116−1]. (Still unable to locate file: notified USCA) (jps) (Entered: 10/25/1994) |
| 12/20/1994 | | Certified and TRANSMITTED RECORD to U.S. Court of Appeals appeal by Roland A. Jones [116−1]. (10 vol. pleadings; 1 deposition). (fem) (Entered: 12/20/1994) |
| 01/17/1995 | | USCA acknowledges receipt of 10 vols. of pleadings and 1 vol. of depositions. (jaw) (Entered: 01/18/1995) |
| 10/27/1995 | 118 | Certified copy of JUDGMENT OF USCA AFFIRMING the decision of the USDC, w/cert/copy of opinion. cc (er) (Entered: 11/06/1995) |
| 10/27/1995 | 119 | Certified copy of ORDER of the U.S. Court of Appeals DENYING appellant's motion eye−to−eye appearance cc (er) (Entered: 11/06/1995) |

| 10/27/1995 | | | Record on appeal returned from Court of Appeals appeal (94−8256) consisting of 10 vols of pleadings and 1 env. of depo. (er) (Entered: 11/06/1995) |
|---|---|---|---|
| 03/25/1996 | 120 | | Certified copy of ORDER of the SUPREME COURT of the U.S. DENYING the petition for a writ of certiorari. cc (er) (Entered: 03/28/1996) |
| 03/30/1999 | 121 | | MOTION by pla for the court to revisit its sum. jgm. and adjudicate the remaining passoverclaim with brief in support. (er) (Entered: 04/01/1999) |
| 04/01/1999 | 122 | | RESPONSE by Secretary of Army in opposition to [121−1] pla's motion for the court to revisit its sum. jgm., and [121−2] to adjudicate the remaining passoverclaim (er) (Entered: 04/06/1999) |
| 04/05/1999 | 123 | | REPLY by pla to [122−1] dfts' opposition AND (er) (Entered: 04/12/1999) |
| 04/05/1999 | 123 | | MOTION by pla for the court to accept, if neccessary, dfts' suggestion that pla's motion qualifies as "a new lawsuit." (er) (Entered: 04/12/1999) |
| 04/23/1999 | | | SUBMITTED to Judge Marvin H. Shoob on [121−1] [121−2] pla's motion for the court to revisit its sum. jgm. and adjudicate the remaining passoverclaim, [123−1] pla's motion for the court accept, if neccessary, dfts' suggestion that pla's motion qualifies as "a new lawsuit." (er) (Entered: 04/23/1999) |
| 05/04/1999 | 124 | | ORDER by Judge Marvin H. Shoob DENYING [121−1] [121−2] pla's motion for the court to revisit its sum. jgm. and DENYING [123−1] pla's motion for the court to accept dfts' suggestion that pla's motion qualifies as "a new lawsuit." (cc) (er) (Entered: 05/05/1999) |
| 05/14/1999 | 125 | | NOTICE OF APPEAL by plaintiff from [124−1] order FILING FEE $ 105.00 RECEIPT # 439217 Appeal information sheet due 5/28/99 (epm) (Entered: 05/26/1999) |
| 05/26/1999 | | | Notice of appeal and certified copy of docket to USCA RE: [125−1] appeal (epm) (Entered: 05/26/1999) |
| 06/11/1999 | 126 | | Acknowledgment by USCA RE: [125−1] appeal USCA dkt no. 99−11525−A (epm) (Entered: 06/11/1999) |
| 08/30/1999 | | | FORTHWITH LETTER from USCA regarding [125−1] appeal. USCA dkt no. 99−11525−AA Appeal record due on 9/9/99 (als) (Entered: 08/31/1999) |
| 08/31/1999 | | | CERTIFICATE OF READINESS of appeal record with certified copy of docket mailed to USCA RE: [125−1] appeal USCA # 99−11525−AA (11 vol. pldgs, 1 deposition) cc (als) (Entered: 08/31/1999) |
| 08/31/1999 | | | Certified and transmitted record to USCA RE: [125−1] appeal USCA dkt no. 99−11525−AA (11 vol. pldgs, 1 deposition) (als) (Entered: 08/31/1999) |
| 09/09/1999 | | | USCA acknowledgment of ROA RE: [125−1] appeal USCA # 99−11525−AA (als) (Entered: 09/10/1999) |
| 04/07/2000 | 127 | | Certified copy of JUDGMENT with/OPINION of USCA AFFIRMING the judgment of the District Court; &that pla/appellant pay to the dfts/appellees, the costs on appeal. RE: [125−1] appeal dkt. # 99−11525. (cc) (er) Modified on 04/11/2000 (Entered: 04/11/2000) |
| 04/07/2000 | | | Appeal record returned from USCA consisting on 11 vols. of pleadings and 1 deposition. RE: [125−1] appeal USCA dkt. # 99−11525 (er) (Entered: 04/11/2000) |

or